[Crim. No. 684.   Third Appellate District.—May 23, 1923.]

## THE PEOPLE, Respondent, v. CHARLES B. LA RUE et al., Appellants.

[1] CRIMINAL LAW—CORPUS DELICTI — INDEPENDENT PROOF — ADMISSIONS.—The *corpus delicti* cannot be established by the extrajudicial statements and admissions of a defendant, without other and independent proof of the substance of the crime charged; and the fact that the admissions were made under oath in the trial of another action does not render them the less extrajudicial.

[2] CRIMINAL SYNDICALISM — MEMBERSHIP IN I. W. W. — CORPUS DELICTI — PROOF. — In a prosecution under an indictment charging that the defendants were members of the Industrial Workers of the World, "organized and assembled to advocate, teach, and aid and abet criminal syndicalism," the criminal organization constitutes the *corpus delicti*, and proof of membership therein serves only to connect the defendants with the crime.

[3] ID. — PROOF OF MEMBERSHIP — TESTIMONY IN OTHER ACTION. — In such a prosecution, the *corpus delicti* being established by the testimony of witnesses other than defendants, the admissions of the defendants, consisting of their testimony in another similar action that they were members of the organization in question, are sufficient proof of their membership in that organization.

[4] ID.—CORPUS DELICTI—MEMBERSHIP—EVIDENCE—CORROBURATION OF ACCOMPLICE—REFUSAL OF INSTRUCTION—LACK OF PREJUDICE. — In such a prosecution, where the evidence tending to connect the defendants with the commission of the offense is of the most trustworthy and positive character, being their own deliberate admissions under oath in another action, and the evidence corroborating the testimony of the accomplices as to the *corpus delicti* is overwhelming, the judgment of conviction will not be reversed on appeal because of the refusal of the trial court to give a requested instruction in the language of section 1111 of the Penal Code, which provides that "a conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense."

[5] ID.—CHARACTER OF ORGANIZATION—EVIDENCE—CRIMES OF FORMER MEMBERS. — In such a prosecution, evidence of crimes committed by former members of the Industrial Workers of the World is admissible to establish the character of that organization.

---

1.   Proof of *corpus delicti* in criminal case, notes, 78 **Am. Dec.** 252; 68 **L. R. A.** 33.

[6] ID.—ACTS OF MEMBERS—HEARSAY. — In this prosecution under an indictment charging that the defendants were members of the Industrial Workers of the World, "organized and assembled to advocate, teach, and aid and abet criminal syndicalism," in view of the innumerable unlawful acts committed by members thereof, as shown by the evidence, the defendants could not have been prejudiced by any error of the trial court in admitting hearsay testimony as to alleged acts and statements of members of the organization.

[7] ID.—IMPEACHMENT OF WITNESS—PROOF OF INSANITY.—In a criminal prosecution it is admissible, in order to affect the credulity of a witness, to prove that he was or is subject to insane delusions, or that his mind and memory are impaired by disease; and such proof may be made by examining the witness himself.

[8] ID. — RIGHT TO SEEK POLITICAL AND INDUSTRIAL CHANGES — INSTRUCTIONS. — In a prosecution under an indictment charging that the defendants were members of the Industrial Workers of the World, the court having instructed the jury, at defendants' request, that it "is proper to seek desired changes in political and industrial control but when criminal or unlawful means are used to effect political control the means are punishable under the act defining and prohibiting criminal syndicalism," it is not error to refuse their further requested instruction to the effect that persons have "the right to advocate peaceable changes in our constitution, laws or form of government."

APPEAL from judgments of the Superior Court of Sacramento County and from an order denying a new trial. Malcolm C. Glenn, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. F. Herron and S. Luke Howe for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

FINCH, P. J.—The indictment charges that the defendants were members of the Industrial Workers of the World, "organized and assembled to advocate, teach, and aid and abet criminal syndicalism." They were tried jointly and found guilty as charged. Their motion for a new trial was denied and separate judgments of conviction were entered. From such judgments and the order denying their motion for a new trial the defendants have appealed. The appeals are prosecuted jointly on a single record.

During the latter part of March and the early part of April, 1922, J. A. Casdorf and Earl Firey were on trial in the superior court of Sacramento County on a charge of criminal syndicalism. All of the defendants herein were called as witnesses by the defendants in that case and respectively testified that they were then and, for periods of time ranging from a few months to several years prior thereto, had been members of the Industrial Workers of the world. The indictment herein was thereafter returned against them, based apparently upon such testimony. Their testimony so given was introduced in evidence by the people at the trial herein. When such evidence was offered, counsel for the defendants admitted that they had so testified but objected to its introduction on other grounds. The only other testimony bearing upon the question of membership is that of William E. Townsend, a witness for the prosecution, who testified to facts tending to show that defendants Smith, O'Mara, and Zangar were members of the organization.

[1] Appellants contend that their membership in the organization is an essential element of the *corpus delicti*. If this contention be well founded, then the judgments against seven of the defendants must be reversed, because few propositions of law are better settled than that the *corpus delicti* cannot be established by the extrajudicial statements and admissions of a defendant, without other and independent proof of the substance of the crime charged. (*People* v. *Vertrees*, 169 Cal. 404, 408 [146 Pac. 890].) The fact that the admissions were made under oath in the trial of another action does not render them the less extrajudicial. (Wharton's Criminal Evidence, 10th ed., p. 1277; *People* v. *Chadwick*, 4 Cal. App. 63 [87 Pac. 384, 389].) It is necessary then to determine what constitutes the *corpus delicti* in this case.

Section 2 of the Criminal Syndicalism Act (Stats. 1919, p. 281) defines five offenses in as many subdivisions. All but the fourth relate to individual acts which are made unlawful in themselves without reference to any organization, society, group, or assemblage of persons. The fourth subdivision provides that any person is guilty of a felony who "organizes or assists in organizing, or is or knowingly becomes a member of, any organization, society, group or

assemblage of persons organized or assembled to advocate, teach or aid and abet criminal syndicalism." If the word "conspiracy" were substituted for the words "organization, society, group or assemblage," the meaning of subdivision four would be in nowise changed. It has been said: "A conspiracy is constituted by an agreement, . . . but it is the result of the agreement, rather than the agreement itself, just as a partnership, although constituted by a contract, is not the contract, but is a result of it. The contract is instantaneous, the partnership may endure as one and the same partnership for years. A conspiracy is a partnership in criminal purposes. That as such it may have continuation in time is shown by the rule that an overt act of one partner may be the act of all without any new agreement specifically directed to that act." (*United States* v. *Kissel,* 218 U. S. 601 [54 L. Ed. 1168, 31 Sup. Ct. Rep. 124, see, also, Rose's U. S. Notes].) The organization here in question is clearly embraced in the foregoing definition of conspiracy and that it constitutes a conspiracy would hardly be questioned. In *People* v. *Steelik,* 187 Cal. 361, 376 [203 Pac. 78, 84], the organization is referred to as "an organization which in its nature was a criminal conspiracy." To conspire to do a forbidden act is the equivalent of becoming a member of a conspiracy to do the act. "It is the nature of the purpose or the nature of the means to obtain the purpose, as the case may be, which imports to the combination, agreement or confederacy its criminal character." (5 R. C. L. 1066.) The gist of the offense denounced by subdivision four is the criminal confederacy. The mere phraseology of the statute is unimportant. Several of the defendants were members when the statute was enacted. Each of them is punishable "because after the statute was passed he violated the terms thereof by knowingly remaining a member." (*People* v. *Steelik, supra.*) In other words, he continued a member of the criminal partnership and is liable as a partner for its continued criminal character. [2] It seems clear that the criminal organization constitutes the *corpus delicti.* Proof of membership therein serves only to connect the defendants with the crime. Proof of the killing of a human being by a criminal agency establishes the *corpus delicti* in homicide without any evidence tending to show who committed the act. After such proof

has been made, the fact that the defendant struck the fatal blow may be shown by his extrajudicial admissions alone. No reason is perceived why the same rule is not applicable here. [3] The admissions of the defendants were not confessions. No inference that a crime had been committed arose from them alone. They were of no value as evidence until criminality was established by other independent evidence. That which such other evidence established, therefore, must constitute the *corpus delicti,* the substance of the crime. The necessity of proving the membership of the defendants in order to justify a conviction does not show that such membership is an element of the *corpus delicti.* Proof that a defendant entered the building alleged in a charge of burglary is necessary to sustain a conviction, yet the fact that the particular person charged made the entry, is not an element of the *corpus delicti,* which may be established by proof that an unknown person made the burglarious entry. Proof that the person charged made such entry is necessary only for the purpose of connecting him with the crime. The admissions in this case are in no manner discredited by the uncertainties and doubts which often attend proof of this character. It is admitted that they were made voluntarily under oath in the trial of a criminal action of a like nature to that for which the defendants were tried. Relative to the value of confessions, it is said: "Assuming the making of a confession to be a completely proved fact— its authenticity beyond question and conceded—then it is certainly true that we have before us the highest sort of evidence. The confession of a crime is usually as much against a man's permanent interests as anything well can be; and, in Mr. Starkie's phrase, no innocent man can be supposed ordinarily to be willing to risk life, liberty, or property by a false confession. Assuming the confession as an undoubted fact, it carries a persuasion which nothing else does, because a fundamental instinct of human nature teaches each one of us its significance." (Wigmore on Evidence, sec. 866.) To hold that the admissions of the defendants admitted in evidence in this case are not sufficient proof of their membership would be to carry an overworked doctrine to the extreme of absurdity.

Such admissions, as stated, did not tend in any degree to show the criminal character of the organization. The people

attempted to show such character by the testimony of former members thereof, corroborated by other evidence. [4] The court refused to give an instruction proposed by the defendants in the language of section 1111 of the Penal Code, which provides that "a conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense." Where the prosecution relies for a conviction upon the testimony of an accomplice, even though corroborated, the proposed instruction should be given, because the jury may reject the corroborating evidence as unworthy of belief, and in such case the instruction would be vital. It remains to be determined whether the refusal to give the instruction has resulted in a miscarriage of justice, because the constitution forbids the reversal of a judgment "on the ground of misdirection of the jury, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Art. VI, sec. 4½.) As pointed out, the evidence tending to connect the defendants with the commission of the offense is of the most trustworthy and positive character, being their own deliberate admissions. The evidence corroborating the testimony of the accomplices as to the *corpus delicti* is overwhelming. In addition to a large quantity of literature which in itself conclusively shows the criminal character of the organization, the testimony of the witness Coutts, a former member, was corroborated in many important particulars. He testified that in the summer of 1917, on a house-boat near Stockton, he was associated with a member of the organization, known as Robert Connellan, in preparing various contrivances for the purpose of injuring and destroying property. The then chief of police of Stockton, Wm. M. Simpson, testified that during that summer he saw Connellan selling I. W. W. literature in Stockton and that he saw Connellan and Coutts together on the house-boat where they had many tools and chemicals, which he later took into his possession. The chemicals and other articles were identified by Simpson and admitted in evidence. L. E. Happell, a chemist, testified that among such exhibits there were powdered emery, phosphorus, sulphuric acid, potassium nitrate, potassium chlorate, sulphuric acid added to potassium ferrocyanide, and a twenty-

per cent solution of potassium hydroxide. Coutts testified that these substances were prepared and kept for various uses, such as injuring the bearings on machinery, starting incendiary fires, poisoning livestock and putting the last-named chemical in the shoes of laboring men who refused to join the I. W. W. He testified that at a meeting of the organization held in its hall in Stockton, about October 1, 1917, a motion was made to send a committee to Modesto "to smoke up the town" because a delegate had been arrested there for selling I. W. W. literature; that the chairman of the meeting stated that such a motion could not appear upon the minutes "but if it had to be done . . . that there was men there that knew how to do it"; that the witness and three others, one apparently the chairman of the meeting, immediately after the adjournment thereof, prepared some phosphorus "kitties" for the purpose of starting fires and later went to Modesto where they placed the kitties in various barns, causing several fires. G. J. Davis, who was then a deputy sheriff at Modesto, testified that between the hours of 10:10 P. M. on the 6th of October, 1917, and 3:05 the next morning eight different fires started in Modesto. He also testified that numerous isolated stacks of hay were burned during the summer of 1917. Other corroborative evidence was introduced, but space forbids the enumeration of any considerable number of the crimes concerning which the former members testified or the corroboration thereof. It is sufficient to say that there is ample corroboration of much of the testimony of at least two of the accomplices. In view of the conclusive character of the evidence, it cannot be said that the refusal to give the proposed instruction has resulted in a miscarriage of justice.

[5] Appellants contend that it was error to admit evidence of the crimes committed by the former members. Such evidence was admissible to establish the character of the organization. (*People* v. *Steelik, supra.*) The evidence was very similar to and much of it identical with that in the case of *People* v. *Roe,* 58 Cal. App. 690 [209 Pac. 381], in which the judgment was affirmed.

[6] It is contended that the court erred in admitting hearsay declarations. Coutts was permitted to testify that in the I. W. W. hall in Stockton, in the presence of the local secretary and other members, including the witness,

Connellan said that he had placed potassium hydroxide in several men's shoes, including those of Joe Arada, on one occasion, because they would not quit their employment. Arada testified that on the occasion referred to fourteen or fifteen men came to the place where Arada and others were employed and worked during one afternoon; that they slept that night in the same room which the other men occupied, and all the newcomers left the next morning before breakfast, leaving some I. W. W. literature on the floor where they had slept; that the feet of himself and the other men were injured by some acid which had been placed in their shoes, those of witness seriously. It is clear that the testimony as to what Connellan said he had done was hearsay in so far as proof of the fact stated by him is concerned. It does not clearly appear whether such statement was made at an authorized meeting of the organization. If made at an authorized meeting, then the testimony was admissible, not as proof of the fact stated, but in connection with any action or omission to take action by the organization relative thereto, as showing its attitude toward the commission of such crimes by its members. In any event, there was other evidence which justified the inference that members of the organization had placed acid in the men's shoes on the occasion mentioned, and, in view of the innumerable unlawful acts committed by members thereof, as shown by the evidence, it is not believed that the admission of the evidence of which complaint is made could have prejudiced the rights of the defendants. Coutts testified that on two occasions he went out with other members to place kitties for the purpose of starting fires and that a number of fires occurred immediately thereafter. He was then permitted to testify that after the fires had started some of the members who had gone with him said they had placed some of the kitties. The testimony as to what the other men said, being a statement of a past event, was purely hearsay and should have been excluded. From the testimony properly admitted, however, to the effect that the members went out for the purpose of setting fires and that fires immediately thereafter occurred at the places where they had gone, the inference naturally arises that they had started them, and the admission in evidence of their subsequent declarations that they had done so was harmless error. Counsel for appellants say that

there are "many other instances in which the trial judge allowed witnesses to testify as to unsworn statements of others which were a mere narration of past events," but they fail to point them out. It is incumbent upon an appellant to point out specifically the errors relied on. The testimony covers more than seven hundred pages of the transcript, and this court must not be expected to search through the long record for errors to which particular attention has not been called. A few minor errors similar to those discussed have been discovered, but it is sufficient to say that none of them are prejudicial. While a court should carefully guard against the admission of hearsay evidence, in a case where so wide a range of evidence is permissible for the purpose of proving the character of an organization, some improper evidence usually creeps into the record, but in this case the hearsay evidence admitted is comparatively, as said in the anarchist's case, *Spies* v. *People*, 122 Ill. 1 [3 Am. St. Rep. 320, 12 N. E. 865, 17 N. E. 898], "so inconsiderable that it could not have in any way injured" the defendants.

[7] The testimony of the witness Townsend embraced his criminal activities as a member of the I. W. W. in a large number of states. He testified that during March, April, May, and June, 1921, he was in the employ of the Citizens' Alliance of Minneapolis. The court sustained the people's objection to the following question: "During the period of time that you say you were in the employ of the Citizen's Alliance in Minneapolis, isn't it a fact that you were in the Minneapolis general hospital undergoing treatment for general paresis?" Counsel for defendants explained the purpose of the question to the trial court as an effort to prove by the witness that at the time stated he was "suffering from incipient general paresis, which of course produces insanity, and it is incipient insanity." The objection should have been overruled. "It is admissible . . . in order to affect the credibility of the witness, to prove that he was or is subject to insane delusions; that his mind and memory are impaired by disease." (Wharton's Criminal Evidence, 10th ed., sec. 370a.) Such proof may be made by examining the witness himself. (Id., sec. 370b; *People* v. *Haydon,* 18 Cal. App. 543 [123 Pac. 1102, 1114]; *People* v. *Salladay,* 22 Cal. App. 552 [135 Pac. 508].) While it must

be conceded that the ruling of the court was erroneous, it is extremely doubtful whether defendants suffered any prejudice thereby. Whatever may be said of the character or trustworthiness of the witness, he endured the ordeal of a long examination on the witness-stand by both parties without any apparent display of mental weakness. From the nature of general paresis, it is highly improbable that one who was in a stage of the disease requiring his confinement in a hospital at a given time would have the mental capacity, eighteen months later, to undergo a long examination in court with the intelligence which the witness displayed.

[8] The court refused to give an instruction proposed by the defendants to the effect that persons have "the right to advocate peaceable changes in our constitution, laws or form of government." At defendants' request the court instructed the jury: "It is proper to seek desired changes in political and industrial control but when criminal or unlawful means are used to effect political control the means are punishable under the act defining and prohibiting criminal syndicalism." The instruction given substantially embraces the proposition of law contained in the one refused.

All the errors committed relate to the proof of the unlawful character of the organization. The proof thereof is so overwhelming that an examination of the whole case not only fails to show a miscarriage of justice but affirmatively shows that a reversal would constitute a miscarriage of justice.

The judgments and orders are affirmed.

Plummer, J., *pro tem.*, and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 22, 1923, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1923.