[Crim. No. 711. Third Appellate District.—February 21, 1924.]

## THE PEOPLE, Respondent, v. JOE WAGNER et al., Appellants.

[1] CRIMINAL SYNDICALISM ACT — ABRIDGMENT OF FREE SPEECH — EQUAL PROTECTION OF LAWS—CONSTITUTIONAL LAW.—The Criminal Syndicalism Act is not unconstitutional as abridging the exercise of the right of freedom of speech as guaranteed by the state and federal constitutions; neither is the act in conflict with the guaranty of the federal constitution interdicting legislation, the effect of which would be to deny to persons the equal protection of the laws or contravene the right of due process of law.

[2] ID.—MEMBERSHIP IN I. W. W.—KNOWLEDGE OF ORGANIZATION.— That part of subdivision 4 of section 2 of the Criminal Syndicalism Act which declares that any person who "is" a member of any organization, etc., the purpose of which is to advocate, teach, etc., criminalism, as said offense is defined in section 1 of said act, is guilty of a felony, is not unconstitutional as permitting the conviction of a person even though he had no knowledge of the alleged criminal character of the organization. Knowledge is a necessary element of the crime denounced by said subdivision, even though the word "is" is not modified by the word "knowingly."

[3] ID.—PRINCIPLES OF SOVIET RUSSIAN ORGANIZATION—EVIDENCE.—In this prosecution for a violation of subdivision 4 of section 2 of the Criminal Syndicalism Act, certain pamphlets and publications having reference to the principles of the Soviet Russian organization and Communists' party principles were correctly admitted in evidence for the purpose of showing the general character of the I. W. W. organization, it having been shown that the general prin-

---

1. Validity of legislation directed against political, social, or industrial propaganda deemed to be of a dangerous tendency, notes, 1 A. L. R. 336, 337; 20 A. L. R. 1543.

ciples of the organizations were the same and that said pamphlets
and publications were found in the possession of one of the
defendants and were among books, papers, and pamphlets ad-
mittedly containing literature regarding the purposes and objects
of the I. W. W. organization.

[4] Id.—Criminal Acts by Members of I. W. W.—Hearsay.—In
such a prosecution, testimony as to a conversation between the
witness and a member of the I. W. W., relating to a certain crime
which the latter claimed to have committed in pursuance of the
policy of said organization, is hearsay and, therefore, inadmissible;
but the erroneous admission of such evidence does not constitute
reversible error where said member of the I. W. W. is also a wit-
ness in the case and testifies to the facts constituting such crime,
and a consideration of the relevant and competent evidence in the
case shows that even with such error, a miscarriage of justice did
not follow the conviction of the accused.

[5] Id.—Principles of I. W. W.—Purported Change—Evidence.—In
such a prosecution, it is not error to permit a witness for the
prosecution to testify that, while it is true that since the enact-
ment of the Criminal Syndicalism Act a change in the principles
of the organization had been effected so as to make it appear that
criminal acts or acts of violence were no longer resorted to in order
to accomplish the purposes of the organization, still the purported
change was a mere camouflage and that the organization and its
members intended to proceed upon the same lines that it always
had adopted in carrying out and crystallizing its principles or se-
curing control of the machinery of industry of the country and
changing our system of government, where such witness states
that he knows this to be the fact because he heard the matter
discussed at meetings of the organization.

[6] Id.—Tenets of Organization—Irrelevant Evidence—Want of
Prejudice.—In such a prosecution, it is error to permit an ex-
member of the I. W. W. to testify that among the tenets of that
organization was the doctrine of free love or the abolition of the
marriage institution, that if the organization succeeds in obtaining
its ultimate ends there will be no churches, that courts will be
done away with and the jails and penitentiaries abolished, etc.;
but it cannot be said on appeal that such error resulted in a mis-
carriage of justice where the record is replete with evidence
tending to establish the fact that the I. W. W. organization
teaches and advocates and encourages the commission of any and
all kinds of crimes in furtherance of the objects of the organiza-
tion.

[7] Id.—Past Crimes—Present Principles—Inference—Weight of
Evidence.—In such a prosecution, the proved fact that the I. W. W.
organization at a previous period in its existence habitually ad-

vocated as a part of its principles and policies the commission of crimes by its members to effect its ultimate objects affords a ground for an inference by the jury that its principles and policies in that respect are now the same as they had always been prior to the trial of the particular case; and the remoteness of the time of the alleged commission of the acts from the time of the arrest and prosecution of the defendants is one which goes to the weight or evidentiary value of the testimony of those acts, and is a matter for the jury to determine.

[8] Id.—Past Acts—Rebuttal—Weight of Evidence.—In such a prosecution, where the people rely upon evidence as to past acts and conduct of the I. W. W. organization to prove its present principles and policies, the defense is entitled to show that since the commission of such acts the organization had changed its policy and condemned, rather than advocated, such acts; and the probative force of such rebuttal evidence is for the determination of the jury.

[9] Id.—Character of Organization—Prior Acts.—In such a prosecution, criminal acts committed before the enactment of the Criminal Syndicalism Act are proper to be shown for the purpose of determining the character of the organization.

[10] Id.—Interpretation of Principles by Outsider—Opinion Evidence.—In a prosecution for a violation of subdivision 4 of section 2 of the Criminal Syndicalism Act, it is not error to disallow the defense to introduce the interpretation published by a certain publicist of the principles of the Industrial Workers of the World, wherein the author (who was not a member of the organization) undertook to demonstrate that said principles and purposes were of a high and commendable character and if concretely applied would tend to ameliorate the condition not only of all laboring men but of all mankind living under a government founded upon such principles.

[11] Id.—Conspiracy—Essential Elements—Instructions.—In such a prosecution, where the court has submitted to the jury several instructions clearly explaining the elements or essentials of a conspiracy, it is not error to refuse to submit a further instruction on that subject requested by defendant, and which is a misleading statement of the law.

[12] Id.—Place of Organization and Membership Affiliation—Instructions.—In such a prosecution, an instruction requested by defendant, and which declares that, to warrant a conviction, the defendants must have been shown to have been members of the I. W. W. in the county in which defendants were being prosecuted, and that, at such time as the jury have found defendants to be members thereof, the I. W. W. was organized in said county to advocate, teach, or aid and abet criminal syndicalism, etc., does

not correctly state the law. It is immaterial where the I. W. W. was organized or where the branch defendants became members of may exist.

[13] Id.—Misstatement of Law—Vital Elements of Crime—Instructions.—An instruction, though in some respects involving a correct statement of the law, may be rejected by the court if, in other particulars, it contains a misstatement of the law; but this does not mean that, as to a vital element of a crime, the court will be excused if it gives no instruction explaining to the jury that such element must be shown to have existed in connection with the act or the crime will not be proved.

[14] Id.—Knowledge—Burden of Proof—Instructions.—In a prosecution for a violation of subdivision 4 of section 2 of the Criminal Syndicalism Act, where the instructions of the court do make reference to the necessity for the element of "knowledge," but they are not amplified as they should have been, and defendants' proposed instructions upon that subject contain a misstatement of the law in certain particulars, the action of the court in failing to give a more explicit and amplified explanation of the proposition that knowledge was an essential element of the offense and, therefore, was required to be proved to the satisfaction of the jury beyond a reasonable doubt, does not justify a reversal of the case.

APPEAL from a judgment of the Superior Court of Sacramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. W. Henderson for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendants, Wagner, Brooks, and Russell, were indicted by the grand jury of Sacramento County for the crime of criminal syndicalism. The defendants, Vargo and Hewitt, were likewise charged with the same offense. The indictment against the first named defendants was presented and filed in the superior court of said county on the second day of March, 1923, and the indictment against Vargo and Hewitt presented and filed in the same court on the tenth day of August, 1923. The same attorneys represented all the defendants under both indictments. By stipulation between said attorneys and the district attorney, the

two cases or indictments were consolidated for the purposes of the trial and, accordingly, the defendants under both indictments were jointly tried.

The jury found the defendants Wagner, Vargo, and Russell guilty as charged. The record does not appear to show what disposition was made of the cases against the defendants Brooks and Hewitt. This, however, is of no material consequence. A motion for a new trial in behalf of each of the convicted defendants was made and denied, and they appealed from the judgment of conviction and the order refusing to grant them a new trial.

The two indictments are founded on subdivision 4 of section 2 of the act designated and known as the "Criminal Syndicalism Act" (Stats. 1919, p. 281). The said section reads as follows: "Any person who organizes or assists in organizing, or is or knowingly becomes a member of any organization, society, group or assemblage of persons, organized or assembled to advocate, teach, or aid and abet criminal syndicalism," is guilty of a felony, etc.

The first section of said act defines "criminal syndicalism" as "any doctrine or precept advocating, teaching or aiding and abetting the commission of crime, sabotage (which word is hereby defined as meaning willful and malicious physical damage or injury to physical property), or unlawful acts of force and violence, or unlawful methods of terrorism, as a means of accomplishing a change in industrial ownership or control, or effecting any political change."

The points urged for a reversal are numerous, but many of them call for but passing, if any, notice herein. It is contended that the evidence, as brought before the jury in support of the indictments, is insufficient to sustain the verdicts. It is further claimed that much of the evidence presented by the people in support of the indictments was legally improper and seriously prejudicial to the rights of the accused. The assignments so made, together with objections to certain instructions, constitute the principal grounds upon which it is insisted that the cases should be sent back for trial *de novo*.

It is expressly conceded by counsel for the defendants that the evidence sufficiently shows that the appealing defendants were members of the organization known as the Industrial Workers of the World.

It is not necessary that the testimony presented by the people should be minutely examined herein. We have read the evidence, as it is disclosed by the record, and we find that it is substantially the same character of proof as was adduced at the trial of other cases in which precisely the same offense as is charged in the indictments here was charged against the accused. (See *People* v. *Steelik,* 187 Cal. 361 [203 Pac. 78]; *People* v. *Taylor,* 187 Cal. 378 [203 Pac. 85]; *People* v. *Roe,* 58 Cal. App. 690 [209 Pac. 381]; *People* v. *La Rue et al.,* 62 Cal. App. 276 [216 Pac. 627]; *People* v. *Flanagan et al., ante,* p. 268 [223 Pac. 1014].) The literature embraced in numerous publications in the form of books, magazines, pamphlets, and leaflets introduced in the instant case to show the principles and objects of the I. W. W. organization is the same, or of the same general character, as that received in the cases just mentioned. Certain of the witnesses (former members of the I. W. W.) giving testimony in this case of the commission of criminal acts in furtherance of the general program to which the I. W. W. organization is, according to its literature, committed, are, we judge from their names (*idem sonans*) the same witnesses who gave substantially the same testimony in the cases above named. As it was held in those cases, so it must be held here, that the testimony in the record now before us affords sufficient support to the verdicts. To some of the testimony, however, the objection is urged that it is incompetent. It is also objected that the acts of violence and other criminal performances which were shown to have been perpetrated by certain members of the Industrial Workers of the World, having been committed some four or five years before the trial of this action, were improperly allowed to be brought into the case because of the remoteness of the time at which they were committed from the time of the arrest and prosecution of the defendants, the argument being that there is no presumption that, even if said organization had then advocated, taught and practiced such criminal acts for the purpose of carrying out its principles and doctrines, said organization had not since changed in that respect and had not adopted lawful and peaceable means for accomplishing its objects and purposes. The objection in this behalf will be later considered.

[1] The contention that the "Criminal Syndicalism Act" is unconstitutional in that its effect is to abridge the exercise of the right of freedom of speech as guaranteed by the state and federal constitutions has been held in numerous cases in which said act and other similar statutes of other states have been considered to be without force. (*People* v. *Steelik*, 187 Cal. 361 [203 Pac. 78]; *People* v. *Gitlow*, 195 App. Div. 773 [187 N. Y. Supp. 783]; *Schenck* v. *United States*, 249 U. S. 47 [63 L. Ed. 470, 39 Sup. Ct. Rep. 247].) Nor is the act in conflict with the guaranty of the federal constitution interdicting legislation, the effect of which would be to deny to persons the equal protection of the laws or contravene the right of due process of law. (*State* v. *Dingman*, 37 Idaho, 253 [219 Pac. 760]; see, also, cases above cited.)

[2] There is no merit in the contention that that part of subdivision 4 of section 2 of the Syndicalism Act which declares that any person who *is* a member of any organization, etc., the purpose of which is to advocate, teach, etc., criminal syndicalism, as said offense is defined in section 1 of said act, is unconstitutional, in that the word "is" is not modified by the word "knowingly" and that, therefore, a person who is or remains a member of said organization would be guilty of a felony under the act, even though he had no knowledge of the alleged criminal character of the organization. In the opinion by Presiding Justice Finch of this court, in the recent case of *People* v. *Flanagan et al.*, *ante*, p. 268 [223 Pac. 1014], it was held that scienter or guilty knowledge or criminal intent was an essential element of the offense of criminal syndicalism. The question is exhaustively considered in that case. To the conclusion reached therein upon that proposition we unqualifiedly adhere. Indeed, we are not reluctant to take a step further and say that, in our opinion, even if the word "knowingly" were altogether eliminated from subdivision 4 of section 2 of the act, it would still remain true that knowledge of the unlawful character of the organization would be a necessary element of the crime denounced by said subdivision.

[3] The next points which may briefly be considered are the rulings of the court upon matters of evidence. The defendant Wagner, when arrested, was distributing certain I. W. W. literature, carrying the same in a canvas bag. In

his room was also found a large quantity of literature, among which were certain pamphlets and publications having reference to the principles of the Soviet Russia organization and Communists' party principles. These were received in evidence over objection by the defendants, the claim being that said organizations are not related to or connected in any way with the Industrial Workers of the World and that the principles they advocated were not those of the latter organization. We think that the court made no error in the rulings allowing in evidence the literature just referred to. The witness Townsend testified that the only difference between the program of the Soviet Russia organization and the Industrial Workers of the World is that the former undertake to secure industrial freedom by or through political methods—that is, through the ballot-box— while the Industrial Workers of the World advocate direct action—that is, forcibly taking control of the industrial machinery of the world and appropriating it and using it according to their conception of the kind of government that should rule society. The said pamphlets and publications were found in the possession of the defendant Wagner and were among books, papers, and pamphlets admittedly containing literature regarding the purposes and objects of the I. W. W. organization. They were admissible for the purpose of showing the general character of the latter organization, since their general principles were the same, and the fact that the defendant had knowledge of the plans of the I. W. W. organization.

[4] It is further objected that the court erred in permitting the witness Townsend to narrate the substance of a conversation occurring between the witness and William Weyh, a member of the Industrial Workers of the World, relating to a certain crime which said Weyh claimed to have committed in pursuance of the policy of said organization to destroy property for the purpose of creating a reign of terror among the people. A similar objection is made to the rulings of the court allowing said Townsend to testify that one Connellan, a member of the I. W. W., told him (the witness) that he (Connellan) and others had deposited potassium hydroxide in the shoes of one Joe Arada, who was employed in digging potatoes for a farmer in the San Joa-

quin Valley; that Connellan, so Townsend was permitted to testify, stated that the effect of putting that chemical in the shoes of Arada was to burn his feet and so cripple him that he could not proceed further in the employment in which he was engaged. The objection to this testimony was well taken. The precise proposition was considered in the cases of *People* v. *La Rue, supra,* and *People* v. *Flanagan, supra,* and in those cases it was properly held that such testimony was wholly hearsay and, therefore, inadmissible. (See, also, *People* v. *Irvin,* 77 Cal. 494, 504 [20 Pac. 56]; *State* v. *Dingman,* 37 Idaho, 253 [219 Pac. 760]; *State* v. *Gibson,* 115 Wash. 512 [197 Pac. 611]; *State* v. *Petilla,* 116 Wash. 589 [200 Pac. 332]; *People* v. *Smith,* 151 Cal. 619, 626 [91 Pac. 511]; *People* v. *Sullivan,* 59 Cal. App. 633 [211 Pac. 647].) As was said in the Flanagan case, so it is true here: ''The hearsay statements erroneously admitted were not made at any meeting of the organization, or to or by an officer or representative thereof, or in the way of propaganda to further its purposes, but the facts sought to be proved by the declarations were the commission of criminal acts by its members,'' who, it may be added, were not on trial either in the Flanagan case or in this. The record shows, however, that said Arada was a witness in this case and testified in detail to the fact of the placing of potassium hydroxide in his shoes at the time and under the circumstances as explained by Connellan to the witness Townsend and the effect of the chemical upon his feet, stating that his feet were so severely burned from contact with the chemical that he became, for a time, helplessly crippled, and that by reason thereof he was compelled to remain in a hospital and under medical treatment for several months. There is also in the record evidence of many circumstances tending strongly to fix responsibility for the said act upon the members of the Industrial Workers of the World. In view of this first-hand testimony of the happening of the act and the competent testimony of circumstances tending to prove it was the work of certain members of said organization, it well may be concluded that the admission of Townsend's hearsay testimony relative to the circumstance *could have done very slight damage to the substantial rights* of the accused. Furthermore, the record contains a mass

of relevant and competent testimony tending to show the
guilt of the defendants, and we think that, as to the rulings
here considered, as well as to some other erroneous rulings
to which reference will later be made, section $4\frac{1}{2}$ of article
VI of the constitution applies—that is to say, that even
with these errors, a miscarriage of justice has not followed
the conviction of the accused, in view of the vast amount
of incriminatory evidence which was received in the case.

[5] It is also contended that one of the witnesses, who
was a former member of the organization, was erroneously
permitted to give his opinion regarding some alleged recent
amendments which had been made to the platform of prin-
ciples of the I. W. W. organization whereby language ex-
pressly or impliedly advocating and teaching acts of sabot-
age and other criminal acts theretofore contained in said
platform was eliminated therefrom. The witness stated
that, while it was true that since the enactment of
the criminal syndicalism law a change in the principles
of the organization had been effected so as to make
it appear that criminal acts or acts of violence were
no longer to be resorted to in order to accomplish the
purposes of the organization, still the purported change
was a mere camouflage and that the organization and its
members intended to proceed upon the same lines that it
always had adopted in carrying out or crystallizing its prin-
ciples or securing control of the machinery of industry of
the country and changing our system of government. The
witness stated that he knew this to be the fact because he
had heard the matter discussed at meetings of the organiza-
tion. We cannot say that this testimony was erroneously ad-
mitted. It is true that the witness now and then expressed
his conclusion regarding the matter, but in the main his
story in this regard involved a statement of a fact, that is,
of the fact that in the discussions which he had heard at
the meetings of the organization with reference to the pur-
ported change the determination of the members was that
acts of violence and crime should go on until the organiza-
tion had succeeded in accomplishing its ultimate purposes.

[6] Over objection by the defendants, an ex-member of
the Industrial Workers of the World was allowed to testify
that among the tenets of that organization was the doctrine

of free love or the abolition of the marriage institution and, therefore, no marriage relation; that, if the organization succeeds in attaining its ultimate ends, there will be no churches, since, as the members thereof contend and proclaim, religion is the most dangerous and implacable enemy that the radical movement has; that religion is a sham to keep people in ignorance; that the courts will be done away with; that jails and penitentiaries will be abolished and that all persons confined therein will be liberated; that the members of the organization refer to the Savior as "Jerusalem Slim," etc. The ruling admitting substantially the same testimony was criticised in the case of *People* v. *Flanagan, supra,* and therein declared to be erroneous; but, as above stated, there is so much evidence in the record tending to establish the fact that the I. W. W. organization teaches and advocates and encourages the commission of any and all kinds of crimes in furtherance of the objects of the organization that we feel that we are forbidden to hold that a miscarriage of justice would or could result from the verdicts even in the face of the ruling referred to.

The complaint that the criminal acts to which the witnesses Townsend, Cox, and Coutts testified were committed by members of the Industrial Workers of the World in pursuance of its policy of obtaining control of the government by violence were perpetrated at a time too remote from the time at which the defendants were arrested and prosecuted to render them competent as testimony against the accused cannot be sustained. It was certainly competent and relevant testimony. There is some discussion in the briefs to the effect that, since it is true that the I. W. W. organization at some past time advocated, practiced, and committed sabotage and other crimes and acts of violence generally as in furtherance of its objects, the presumption "that a thing once proved to exist continues as long as is usual with things of that nature" (sec. 1963, subd. 32, Code Civ. Proc.) is applicable. We doubt the soundness of that position. Section 1959 of the Code of Civil Procedure declares that a "presumption is a deduction which the law *expressly directs* to be made from particular facts." Section 1960 declares: "An inference must be founded: 1. On a fact legally proved; and, 2. On such a deduction from that fact as is warranted by a consideration of the usual pro-

pensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature." To apply the presumption declared in subdivision 32 of section 1963, *supra*, in a case of this character would almost be tantamount to declaring it to be a maxim of the law that "once a criminal always a criminal." It is true that said presumption is subject to be controverted, but it is not the law that a jury in a criminal case is compelled as a matter of law to make the deduction from the fact that a person or combination of persons has once been engaged in the business of committing crimes, that such person or combination is guilty of the particular crime for which he or it is on trial. [7] In this case the proved fact that the I. W. W. organization at a previous period in its existence habitually advocated as a part of its principles and policies the commission of crimes by its members to effect its ultimate objects affords a ground for an inference by the jury that its principles and policies in that respect are now the same as they had always been prior to the trial of the particular case. The remoteness of the time of the alleged commission of the acts from the time of the arrest and prosecution of the defendants was one which would go to the weight or evidentiary value of the testimony of those acts and, obviously, this would be a matter for the jury to determine. [8] In this connection, it should be stated that the witness Townsend testified that certain criminal acts were committed by the members of the organization, for the purposes of the organization, as late as the year 1921. The defendants were at liberty and entitled to show that since the commission of the acts above referred to the organization had changed its policy and condemned, rather than advocated, such acts. This would have been a proper defense. In this connection, it should be stated that the defendants did not themselves take the witness-stand. Several witnesses, however, testified in behalf of the defendants and gave testimony negativing the testimony by the people that the resort to violence of any character was a part of the program or platform of principles and policies of the I. W. W. organization. There were also introduced by the defense a number of printed articles containing a favorable analysis and interpretation of the principles of said organiza-

tion. The probative force of this evidence was for the determination of the jury. In other words, it was for the triers of the fact to say whether or not the evidence presented by the defense was sufficient to overcome the case made by the people in support of the indictments. [9] It may be added that the criminal acts committed before the enactment of the criminal syndicalism statute were proper to be shown for the purpose of determining the character of the organization. (*People* v. *Steelik*, 187 Cal. 361 [203 Pac. 78]; *People* v. *Lloyd*, 304 Ill. 23 [136 N. E. 505].)

[10] It is claimed that the court committed error in disallowing the defense to introduce the interpretation published by a certain publicist of the principles of the Industrial Workers of the World. The said interpretation involved an analysis of the principles and purposes of said organization and the author undertook to demonstrate thereby that said principles and purposes were of a high and commendable character and if concretely applied would tend to ameliorate the condition not only of all laboring men but of all mankind living under a government founded upon such principles. The court refused to allow the proffered literature or essay on the ground that it was not shown that the author was a member of the Industrial Workers of the World and on the further ground that it involved the mere opinion of an "outsider." We think the ruling was proper. If such testimony were admissible in a case of this character many opinions of the principles and purposes of said organization of diametrically opposite trend could be introduced in evidence and none lead to the establishment of any substantial fact or any fact or facts from which a jury could intelligently form a conclusion as to the guilt of the defendants of the charge made in the indictments. (*People* v. *Lloyd*, 304 Ill. 23 [136 N. E. 505]; *People* v. *Gitlow, supra.*)

There are several other rulings of the court upon the question of the admissibility of evidence which are criticised as erroneous and prejudicial, but which need not be specially considered herein, since they are of the same general character as those assignments which have already been considered. We have carefully examined all the assignments under this head and feel well convinced that, even with errors that have been noticed and others of a similar

general kind which will not be noticed herein, the verdicts are so well buttressed by strong competent proof of guilt that a miscarriage of justice will not be the result of the verdicts here complained of. As was said by the Illinois supreme court, in *People* v. *Lloyd*, 304 Ill. 23 [136 N. E. 505, 531], so with equal pertinency and force may it be said of the record here and our examination thereof: "There are many other objections to the court's rulings on the admission of special items of evidence, but it would serve no useful purpose to consider them in detail. We have considered with care each and every objection urged by plaintiffs in error with respect to the admission and rejection of evidence, and while we do not hold that the record is free from error in this respect we do hold that no substantial error was committed. Granting that there were minor errors committed by the trial court, it does not follow that the judgment must be reversed. Plaintiffs in error make no defense on the merits. Not one of them took the stand to explain his participation in this conspiracy, or his conduct in connection with it. The competent evidence in the record, in our judgment, leaves no room for the slightest doubt of the guilt of plaintiffs in error."

In dismissing now this branch of the case, we feel constrained, in view of some of the errors to which we have herein called special attention—errors which, in very recently decided cases in California involving the same charge that is stated in the indictments here have been pointed out and so characterized in language of singular perspicacity —to venture the earnest wish that such errors may not in the trial in the future of cases of like character be repeated.

[11] It is contended that the court erred by its refusal to submit to the jury the following instruction requested by the defendants: "The mere fact that two or more persons are instrumental in bringing about the same result, is not, in itself, sufficient to establish a conspiracy between such persons, unless there is an agreement or understanding between such persons to bring about, or attempt to bring about, such result."

The above instruction is a misleading statement of the law. It is true that there must be an agreement or understanding between two or more persons to do an unlawful act

or a lawful act by unlawful means to constitute a conspiracy, but it is also true that the fact that two or more persons were "instrumental in bringing about the same result," if such result or the means adopted to accomplish it be unlawful would be at least *prima facie* and, under conceivable circumstances, sufficient evidence of a previous agreement or understanding between such persons to bring about such result. The court, however, submitted to the jury several instructions clearly explaining the elements or essentials of a conspiracy, as follows: " . . . A conspiracy exists when two or more persons conspire or combine together to commit an unlawful act; . . . A conspiracy is an illegal agreement between two or more persons to do an illegal act or a legal act in an illegal way. The gist of the conspiracy is the agreement, or meeting of the minds of the conspirators. While you may find the existence of a conspiracy from circumstantial evidence, that evidence must be of sufficient strength to convince your minds. A conspiracy cannot be established by a mere guess or suspicion. It must be founded upon the evidence."

The defendants proposed and the court refused to embrace within its charge the following instruction:

"Before you can convict any one of these defendants you must find that three facts existed, to a moral certainty, and beyond every reasonable doubt. These facts are as follows: 1st, that at, or about, the time mentioned and charged in the indictment against him such defendant was a member of the Industrial Workers of the World, in the County of Sacramento, in the State of California; 2nd, That at such time as you have found such defendant to be a member thereof, the Industrial Workers of the World was organized in the said County of Sacramento to advocate, teach, or aid and abet Criminal Syndicalism as that term has elsewhere been defined to you in these instructions; and 3rd that at the time such defendant has been found to be a member of that organization, that defendant knew that the Industrial Workers of the World was organized for such purpose.

"Unless you find each of the foregoing facts to exist with regard to each defendant, it will be your duty to acquit such defendant."

The court included within its charge section 1 of the Criminal Syndicalism Act, defining the offense of criminal syndicalism, and also subdivision 4 of section 2 of said act, which, as seen, in effect provides that knowledge is an element of the offense specifically charged in the indictments in this case. The court further instructed the jury as follows:

"You are instructed that if you believe from the evidence beyond a reasonable doubt that the I. W. W. organization and its members was at the time charged in the indictments engaged in a conspiracy which had for its object the commission of the acts denounced by the criminal syndicalism statute of this State and which I have read to you, and if you further believe from the evidence beyond a reasonable doubt that such conspiracy, if conspiracy there be, on the part of the I. W. W. organization and its members, was still continuing, at the time charged in the indictments, not having yet accomplished its purpose, and if you further find that the defendants *knowingly* became members of the said I. W. W. organization, then I instruct you that by so *knowingly* becoming members of such organization they thereby adopted and became co-conspirators."

It seems to us that the instruction last above quoted herein, together with a statement of the provisions of subdivision 4 of section 2, upon which the indictments were predicated, sufficiently conveyed to the jury the proposition that knowledge of the character of the organization was an essential ingredient of the crime for which the accused were on trial. It would manifestly have been the better course, and certainly only just, for the court to have amplified the fact that scienter or knowledge is an element of the offense which had to be proved to the satisfaction of the jury to justify a conviction, and if a proper instruction of that character had been requested by the defendants, it would have been error—whether sufficiently prejudicial to require a reversal, we need not here say—for the court to have rejected it. Indeed, we are of the opinion that even if an instruction upon the question of knowledge were not requested by either the defendant or the people it would, nevertheless, be the duty of the court, *sua sponte,* to have given an instruction clearly explaining that, as in every crime in

which, to consummate it, intent is as essential as the act, knowledge of the criminal character of the organization was as necessary to be proved as the fact of being or becoming a member thereof. [12] But the above instruction, offered by the defendants upon the subject, does not, as must be readily apparent upon reading it, state the law correctly. It will be observed that it declares that to warrant a conviction the defendants must have been shown to have been members of the Industrial Workers of the World *in the county of Sacramento;* that "at such time as you have found such defendant to be a member thereof, the Industrial Workers of the World *was organized in the said County of Sacramento* to advocate, teach, or aid and abet criminal syndicalism," etc. It is a proposition too obviously sound to require discussion that it is immaterial, so far as that phase of the case is concerned, whether the Industrial Workers of the World was organized in Chicago, Los Angeles, San Francisco, Sacramento, or Seattle, or whether the defendants were members of the organization in Sacramento city or any other place where a branch of the organization may exist. It is only necessary to prove, so far as that element of the crime is concerned, that they have become or are members of said organization. [13] An instruction, though in some respects involving a correct statement of the law, may be rejected by the court if, in other particulars, it contains a misstatement of the law. This does not mean, however, as we have before pointed out, that, as to a vital element of a crime, the court will be excused if it gives no instruction explaining to the jury that such element must be shown to have existed in connection with the act or the crime will not be proved. [14] As stated above, we think that, in view of the instructions which the court did give upon the subject of knowledge, though not amplified as they should have been, and in view of the further fact that the defendants' proposed instruction upon the subject contained a misstatement of the law in certain particulars, the action of the court in failing to give a more explicit and amplified explanation of the proposition that knowledge was an essential element of the offense and, therefore, required to be proved to the satisfaction of the jury beyond a reasonable doubt, does not justify us in reversing the case. The situation in this case with respect to the question of scienter

is very much different from that in the case of *People* v. *Flanagan, ante,* p. 268 [223 Pac. 1014]. In the latter case, the jury, after the case was submitted to them and they had retired to consider their verdict, returned into court and, in effect, inquired whether knowledge of the character of the organization was necessary to be shown, and the court replied: "That the law does not require that the prosecution prove that he knew the character of the organization when he joined it. . . . The word 'knowingly' there means that he must know that he joined the organization." Thus, it is to be seen, the court in the Flanagan case, misinterpreted the word "knowingly" as the same is used in the statute and in its written instructions, and, consequently, erroneously told the jury that knowledge of the alleged criminal character of the organization was not an element of the offense charged. No such an incident occurred in the instant case.

We have now given consideration to all the points that we believe deserve special notice herein and, after an examination of the record and all the points urged for a reversal, we have been persuaded to the conclusion that the judgments and the orders appealed from should not be disturbed.

Accordingly, the judgment and the order as to each of the appealing defendants are affirmed.

Plummer, J., and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 21, 1924.

All the Justices concurred.