## CENTRAL R. CO. OF NEW JERSEY v. MONAHAN.

(Circuit Court of Appeals, Second Circuit. March 8, 1926.)

No. 205.

**1. Commerce ⊚⇒27(8)—Foreman of working gang, engaged in carrying lumber for repair of bridge used in interstate commerce, held engaged in "interstate commerce" (Comp. St. §§ 8657–8665).**

Foreman of working gang, engaged in carrying lumber for repair of bridge used in interstate commerce, who was injured while attempting to board moving work train on siding, was engaged in "interstate commerce," within federal Employers' Liability Act (Comp. St. §§ 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**2. Appeal and error ⊚⇒1058(1).**

Exclusion of questions calling for opinion of witnesses *held* not error, where substance of evidence excluded got before jury or was unimportant.

**3. Appeal and error ⊚⇒970(2)—Exclusion of conductor's testimony as to whether he could have felt jerk of work train, alleged to have caused employee's death, and whether it was necessary for him to give starting signal, was within trial court's discretion, and not reversible error (Comp. St. §§ 8657–8665).**

In action under federal Employers' Liability Act (Comp. St. §§ 8657–8665) for death of railroad employee, injured while attempting to board moving work train, involving question whether accident was caused by sudden jerking of train, *held* that, though it would have been better to allow conductor to testify whether he could have felt jerk where he was standing, and whether it was necessary for him to give starting signal, this was matter of trial court's discretion, which will not be reversed, unless Circuit Court of Appeals can see that harm was done.

**4. Trial ⊚⇒296(6)—Failure to instruct that railroad employee assumed risk of attempting to board moving trains held not reversible error, where jury were clearly advised in respect thereto.**

Though court should have properly instructed that foreman of working gang, fatally injured while attempting to board moving work train, assumed risk of boarding moving trains, failure to do so was not reversible error, where jury were clearly advised in respect thereto, and case was simple; only issue of fact being whether decedent was jerked off of train by sudden jolt thereof.

**5. Appeal and error ⊚⇒1026—Though verdict is clearly excessive, Circuit Court of Appeals will not strain at possible irregularities to obtain reversal which it would otherwise pass.**

Though verdict is clearly excessive, Circuit Court of Appeals will not strain at possible irregularities to obtain reversal in conduct of cause, which it would pass, had verdict been lower, or had it been reduced by District Judge.

In Error to the District Court of the United States for the Southern District of New York.

Action by Matilda H. Monahan, as administratrix of Patrick Monahan, deceased, against the Central Railroad Company of New Jersey. Judgment for plaintiff, and defendant brings error. Affirmed.

Writ of error to a judgment of the District Court for the Southern District of New York in an action at law upon a judgment for damages arising from the death of the plaintiff's husband through the defendant's negligence.

The plaintiff was the wife and is the administratrix of one Patrick Monahan, who, during his life, was the foreman of a construction gang working for the defendant railroad. The complaint, which was under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), alleged that on October 20, 1920, while so at work, Monahan attempted to board a moving work train near Elizabethport, N. J., but lost his foothold and was thrown beneath the wheels, where he received injuries from which he died the next day. The bill of particulars alleged that, as the decedent had his hand upon the guard rail and his foot upon the step, the train gave a sudden jerk, which loosened his hold and threw him to his death. The answer, besides

traversing the important parts of the complaint, alleged contributory negligence and assumption of all the risks of employment.

At the trial the plaintiff proved that the decedent was the foreman of a working gang which was carrying lumber to be used in the repair of a bridge across Newark Bay, New Jersey. The train took on the lumber at Jersey City, and went westerly across and to the westerly end of the bridge, where it unloaded the lumber from some of the cars. As a passenger train was due, it had to go upon a siding, and while resting there the decedent and the conductor went to a signal tower near by. Receiving word that it was time to go back to the bridge, they started to walk toward the train, still on the siding. While on their way, the train began to back towards them, and the decedent tried to board the front platform of the caboose at the end of the train. As he did so, there was evidence of a sudden jolt or jar, which threw him off.

Three questions were argued on this writ: First, whether the decedent was engaged in interstate commerce; second, certain errors in the admission of evidence; third, the insufficiency of the charge.

The train did not leave New Jersey and the gang was not to repair the bridge; that was to be done by carpenters, the gang being engaged solely in bringing new lumber to the bridge and taking away the old lumber from it, some three weeks afterwards. There was no evidence to show how soon after the lumber was laid on the bridge along the sides of the track the bridge carpenters were to begin to use it.

The facts touching the second and third questions are dealt with in the opinion.

Charles E. Miller, of New York City, for plaintiff in error.

Humphrey J. Lynch, of New York City (Sol Gelb, of White Plains, N. Y., of counsel), for defendant in error.

Before MANTON, HAND, and MACK, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] It appears to us that the case is ruled by Pedersen's Case, 33 S. Ct. 648, 229 U. S. 146, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, and Smith's Case, 39 S. Ct. 396, 250 U. S. 101, 63 L. Ed. 869, so far as concerns the decedent's employment. The only distinction between the case at bar and Pedersen's Case is that Pedersen was fetching a rivet to a bridge on which he was himself working. Any importance that circumstance may be thought to have is met by

Smith's Case, in which it was absent. Smith was the cook of a repair gang, and never did work upon the tracks or bridges of any kind whatever. His sole relation to interstate commerce was that he cooked the meals for the gang and lived in the work car with them. It appears to us to be a matter of indifference whether the workman serves his fellows' stomachs with food or their hands with materials.

The defendant especially relies upon Harrington's Case, 36 S. Ct. 517, 241 U. S. 177, 60 L. Ed. 941, in which the injured workman was engaged in carrying coal to bins where it was to be used in interstate and intrastate engines. This case should, however, be read with Collin's Case, 40 S. Ct. 450, 253 U. S. 78, 64 L. Ed. 790, and Szary's Case, 40 S. Ct. 454, 253 U. S. 86, 64 L. Ed. 794. These came up together from this court, and upon an equal division of the judges who decided them. Collins operated a signal tower, and was pumping water to a feed tank by means of a gasoline engine, which caught fire and injured him. After some uncertain language as to how far the employment in the signal tower might color that at the pump, we understand the court, on page 85, meant to declare that the pumping of itself was interstate commerce. Szary had been drying sand for engines, and was engaged in carting away some ashes, when he was struck while pausing to take a drink. As we understand the case, it was thought enough that he was generally engaged in drying sand for interstate and intrastate engines; certainly it was said to be unimportant what the next engine should be that he was to sand. Harrington, on the other hand, had not yet brought his coal to any common reservoir, and this may well be the distinction. If so, Harrington's Case does not apply here, because some of the lumber had actually been laid in place, awaiting the carpenters. In any event, we regard the two later cases as controlling. The cases are full of casuistry, which we would avoid as far as possible. We cannot see any ground for drawing a distinction between a sequence of activities performed by a single man and the same sequence when divided between two.

[2] The supposed errors in the admission of evidence are not substantial. The allowance of two leading questions and of the testimony of Sansone and Cannon call for no more than an allusion. The other rulings sustained objections to questions which called for the opinion of the witnesses. These were probably correct, according to the orthodox American canon, and in any event the

substance of the evidence ruled out either got before the jury or was unimportant. But in fact the questions excluded were reasonable, and it would have been better to allow them. The truth is, as Mr. Wigmore has observed at length (sections 1917–1929), that the exclusion of opinion evidence has been carried beyond reason in this country, and that it would be a large advance if courts were to admit it with freedom. The line between opinion and fact is at best only one of degree, and ought to depend solely upon practical considerations, as, for example, the saving of time and the mentality of the witness. It is hardly ever reversible error to admit such evidence; its foundation may generally be as conveniently left to cross-examination. Every judge of experience in the trial of causes has again and again seen the whole story garbled, because of insistence upon a form with which the witness cannot comply, since, like most men, he is unaware of the extent to which inference enters into his perceptions. He is telling the "facts" in the only way that he knows how, and the result of nagging and checking him is often to choke him altogether, which is, indeed, usually its purpose.

[3] It is a good rule as nearly as one can, to reproduce the scene as it was, and so to correct against the personal equations of the witnesses. But one must be careful not to miss the forest for the trees, as generally happens, unless much latitude is allowed. In the case at bar it would have been better to allow the conductor to say whether he could have felt the jerk where he was standing, and whether it was necessary for him to give a starting signal in addition to the movement of the dwarf switch. Both these perceptions could be otherwise elicited only by a disproportionate amount of nice examination, in which his real contribution to the truth was likely to be lost. In fact, they were not brought out at all, and the plaintiff, by houghing at the questions, succeeded in suppressing what he had to say in the only way he could probably have said it. But, except in extreme cases, where we can see that harm is done, all such matters are in the discretion of the trial judge.

[4, 5] The last point is of the charge. The only question of fact that the jury had to decide was whether, when the decedent tried to board the car, he was jerked off by a sudden jolt. If this happened, the plaintiff might recover; if it did not, she could not. It was proper, perhaps it was necessary, to add that the decedent assumed the risk of boarding moving trains, though really that would have been included in a bare statement of the single relevant issue. The charge was not, indeed, so straitly confined; but we think that, when coupled with the defendant's requests, which were given, the jury were advised clearly enough that this was what they were to decide. Indeed, the case was so simple that, in the absence of some actively misleading instructions, it is hard to see how they could have gone astray. We are, indeed, tempted to reach out against a verdict which is very clearly excessive, and which we should reduce, if we could; but, that being beyond our proper powers, we decline to strain at possible irregularities in the conduct of the cause, which we should pass, had the verdict been lower, or had the District Judge reduced it.

Judgment affirmed.