UNITED STATES v. SCHNEIDER-
MAN et al.

Cr. No. 22131.

United States District Court,
S. D. California, Central Division.

Aug. 19, 1952.

See also D.C., 106 F.Supp. 906; D.C., 106 F.Supp. 941.

Walter S. Binns, U. S. Atty., Norman Neukom, Asst. U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Los Angeles, Cal., Lawrence K. Bailey, Sp. Asst. to Atty. Gen., for plaintiff.

Ben Margolis, Los Angeles, Cal., for defendants Oleta O'Connor Yates, Mary Bernadette Doyle and Albert Jason Lima.

Norman Leonard, San Francisco, Cal., for defendants Loretta Starvus Stack, Ernest Otto Fox, also known as Ernest Otto

Fuchs, and Frank Carlson, also known as Solomon Szkolnick.

Leo A. Branton, Jr., Los Angeles, Cal., for defendants Henry Steinberg, Ben Dobbs, also known as Benjamin Isgur and Carl Rude Lambert.

A. L. Wirin, Los Angeles, Cal., for defendants Al Richmond, also known as Abraham Richman, Rose Chernin Kusnitz and Frank Efroim Spector.

Alexander H. Schullman, Los Angeles, Cal., for defendants Philip Marshall Connelly and Dorothy Healey Connelly, charged as Dorothy Rosenblum Healey.

MATHES, District Judge.

Defendants are on trial under an indictment charging them as members of an alleged conspiracy to commit offenses against the United States, 18 U.S.C. § 371, prohibited by the Smith Act, 54 Stat. 670 (1940), 18 U.S.C. (1946 ed.) § 10; Id. (1948 ed.) § 2385, "by (1) wilfully * * * advocating and teaching the duty and necessity of overthrowing the Government of the United States by force and violence * * * and by (2) wilfully * * * helping to organize as the Communist Party of the United States of America * * * a group * * * of persons who teach and advocate the overthrow * * * of the Government of the United States by force and violence, with the intent of causing the * * * overthrow * * * of the Government * * * by force and violence as speedily as circumstances would permit."

The prosecution has rested the case in chief, and the defendants have presented numerous motions to strike portions of the evidence. Although the specifications embraced within the motions are myriad, the grounds upon which the motions are rested may be categorized under relatively few headings.

It is urged that certain evidence should be stricken because any offense which might have been committed during the period to which it relates is barred by the statute of limitations. The indictment was brought on December 21, 1951, and the contention is advanced that no evidence should be admissible as to matters occurring before December ber 21, 1948, 18 U.S.C. § 3282, even though such matters may have occurred during the period covered by the indictment—i. e., since the effective date of the Smith Act on June 28, 1940, 54 Stat. 670 (1940). The prosecution replies *in summa* that the alleged conspiracy at bar is a continuing one, and hence should be treated as one conspiracy instead of several.

Reliance is thus placed on the statement of Mr. Justice Holmes in United States v. Kissel, 1910, 218 U.S. 601, 607, 31 S.Ct. 124, 126, 54 L.Ed. 1168, that "when the plot contemplates bringing to pass a continuous result that will not continue without the continuous co-operation of the conspirators to keep it up, and there is such continuous co-operation, it is a perversion of natural thought and of natural language to call such continuous co-operation a cinematographic series of distinct conspiracies, rather than to call it a single one." See also Brown v. Elliott, 1912, 225 U.S. 392, 400–401, 32 S. Ct. 812, 56 L.Ed. 1136.

■ It is possible to misinterpret the language quoted as holding that whenever there is a "continuing conspiracy," there is in effect a tolling of the statute of limitations. Of course this is not true. Where as here there are two component elements of the offense—the agreement and an "act to effect the object of the conspiracy * * *" 18 U.S.C. § 371—both are essential to constitute a punishable crime. The agreement is the element which can be continuous, while the overt act, by its nature is of short duration. See Hyde v. United States, 1912, 225 U.S. 347, 387–391, 32 S. Ct. 793, 56 L.Ed. 1114 (dissenting opinion, Holmes, J.).

■ Moreover, even though there may be a continuous agreement, as soon as an act is done "to effect the object" of that agreement, the crime of conspiracy is complete and an indictment for that offense must be found "within three years next after such offense shall have been committed." 18 U.S.C. § 3282; Pinkerton v. United States, 5 Cir., 1944, 145 F.2d 252, 254; Ware v. United States, 8 Cir., 1907, 154 F. 577, 12 L.R.A.,N.S., 1053, certiorari denied, 1907, 207 U.S. 588, 28 S.Ct. 255, 52 L.Ed. 353;

see United States v. Bradford, E.D.La.1905, 148 F. 413, 418, 419, affirmed, 5 Cir., 1907, 152 F. 616, certiorari denied, 1907, 206 U.S. 563, 27 S.Ct. 795, 51 L.Ed. 1190.

■ This does not mean that evidence of the conspiracy antedating the three-year period is not admissible, but rather that in order to convict the accused, the proof must establish that the agreement, shown to exist prior to the three-year period, continued in effect, and an overt act was committed, within the three-year period of the statute of limitations.

■ Thus the doctrine of "continuing conspiracy" renders admissible evidence of the agreement and of overt acts beyond the three-year period—not to show the guilt of the accused at the time such acts were committed—but to show an illegal agreement, and any participation of a defendant in it, and his knowledge and intent; all to aid determination by the jury of the issues raised by the indictment as to whether, within the three-year period, (1) the conspiracy existed, (2) the defendant was a party thereto with the knowledge and intent charged, and (3) an overt act was done "to effect the object of the conspiracy".

The problem at bar in this connection is made to appear somewhat complex by the circumstance that the date from which the three-year period should be measured is a matter of dispute. Originally, the defendants were charged under two separate indictments: one charging twelve defendants was filed on July 31, 1951; the other charging the remaining three—defendants Spector, Carlson and Dobbs—was not found until September 5, 1951. Both indictments were later dismissed because of a defect of law, United States v. Schneiderman, S.D. Cal.1951, 102 F.Supp. 87, and the present indictment charging all fifteen defendants (the case as to defendant Doyle was later severed) was returned on December 21, 1951.

18 U.S.C. § 3288 declares that: "Whenever an indictment * * * is found * * insufficient for any cause, after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned not later than the end of the next succeeding regular term of such court * * * which new indictment shall not be barred by any statute of limitations."

And 18 U.S.C. § 3289 provides that: "Whenever an indictment is * * * found * * * insufficient for any cause, before the period prescribed by the applicable statute of limitations has expired, and such period will expire before the end of the next regular term of the court to which such indictment was returned, a new indictment may be returned not later than the end of the next succeeding regular term of such court * * *. which new indictment shall not be barred by any statute of limitations."

By virtue of 18 U.S.C. §§ 3288, 3289 the Government argues that evidence of any overt act occurring within three years of the original indictment should be received as proof of the overt act required by 18 U.S.C. § 371. The prosecution does not specify which original indictment should fix the starting date, but the earlier indictment of July 31, 1951, is the only one which could affect the result here, since overt acts 11 and 12 of the present indictment are alleged to have occurred on August 21, 1948, and so are the only ones which fall within the three-year period next preceding the indictment of July 31, 1951, and without the period applicable to the "new indictment."

■ In any event the August 21, 1948 acts could not be shown as overt acts in the case against defendants Carlson, Dobbs and Spector, inasmuch as the original indictment charging them was not found until September 5, 1951. 18 U.S.C. § 3282.

■ As to the remaining defendants, the conspiracy is alleged to have commenced "from on or about June 28, 1940" (the effective date of the Smith Act), and to have continued to and including the date of the finding of the present indictment (December 21, 1951). From the very terms of the quoted statute, the original indictments were not found insufficient "after the period * * * of limitations has expired", 18 U.S.C. § 3288, nor will such period "expire before the end of the next regular term of the court to which such indictment was returned". 18 U.S.C. § 3289. Hence neither statutory provision relating back the

date of filing of the "new indictment" is applicable here. See Fed.Rules Crim.Proc. rule 45(c), 18 U.S.C.A.

■ This holding does not however render inadmissible evidence as to alleged overt acts antedating the three-year period immediately preceding the "new indictment." For such evidence is admissible as relevant to the issue *inter alia* of whether or not an illegal conspiracy existed within the applicable three-year period—in this case December 21, 1948 to December 21, 1951.

The motion to strike, as being beyond the statute of limitations, evidence relating to the period commencing with the effective date of the Smith Act on June 28, 1940 and ending with the commencement of the period of limitations herein on December 21, 1948 must be denied for the reasons stated.

■ With respect to such evidence, the jury will be instructed in substance as follows:

Evidence as to alleged statements or declarations and teachings of instructors in alleged Communist Party schools, and as to certain alleged statements or declarations and acts of other alleged members of the Communist Party, said to have occurred after the Smith Act became law on June 28, 1940 has been received as being relevant to the issue of what was the nature and character and aims and objectives of the Communist Party during the three-year period immediately preceding the filing of the indictment on December 21, 1951. That is to say, such evidence as to alleged activities of the Communist Party since June 28, 1940 may be considered in determining whether or not, during the three-year period prior to the finding of the indictment, the Communist Party of the United States of America was a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit, as alleged in the indictment.

■ The jury will be further instructed that if they find existence of the conspiracy charged in the indictment, and further find that all or any of the alleged club chairmen, teachers and others were knowingly and wilfully parties to or members of the conspiracy, then the acts thereafter done and the statements or declarations thereafter made by those whom the jury find to be members of the conspiracy may be considered in connection with the case of any defendant whom the jury also find to be a member of the conspiracy; and may be treated as if the acts or statements or declarations were done or made by such defendant, provided such acts were done and such statements or declarations were made during the continuance of the conspiracy and in furtherance of an object or purpose of the conspiracy.

■ It is next urged that evidence of matters occurring prior to June 28, 1940— the effective date of the Smith Act, 54 Stat. 670 (1940)—should be stricken. The gist of the argument in support of this motion is that since *ex lege* there could not have existed prior to the Smith Act an illegal conspiracy for the purposes charged, there could be no admissible evidence of acts done or declarations made by alleged co-conspirators prior to the date of the Act.

Evidence as to pre-Smith Act declarations and acts of third persons might possibly be found to constitute conduct of persons in fact engaged at that time in a common enterprise with the defendants. Hitchman Coal & Coke Co. v. Mitchell, 1917, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260. In such case the agreement made prior to the Smith Act would, if continued, become *ipso facto* an illegal agreement thereafter; and such illegal post-Smith Act agreement and legal pre-Smith Act agreement would amount to the same conspiracy in fact. See Egan v. United States, 8 Cir., 1943, 137 F.2d 369, 381–382 certiorari denied, 1948, 320 U.S. 788, 64 S.Ct. 195, 88 L.Ed. 474; cf. United States v. Reading Co., 1920, 253 U.S. 26, 43–45 40 S.Ct. 425, 64 L.Ed. 760; Standard Oil Co. of New Jersey v. United States, 1911, 221 U.S. 1, 46–47, 31 S.Ct. 502, 55 L.Ed. 619; United States v. E. I. Du Pont De Nemours & Co., C.C.Del. 1911, 188 F. 127, 151–152.

In support of the argument for a ruling in accordance with such a concept of a pre and a post-Smith Act conspiracy identical in fact, the prosecution cites as precedent

the handling of analogous testimony in United States v. Dennis, 2 Cir., 1950, 183 F.2d 201, 230, affirmed, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137. There the defendants were charged with a violation of § 3 of the Smith Act, 54 Stat. 671 (1940)—conspiring to advocate the overthrow of the Government by force and violence. Whereas the defendants at bar are charged with a violation of 18 U.S.C. § 371—conspiring to commit offenses against the United States by violating 18 U.S.C. § 2385, which proscribes advocacy of the overthrow of the Government by force and violence.

It is urged in support of the Government's position that the difference between the charge in the Dennis case and that at bar is one of form only, necessitated by the repeal of § 3 of the Smith Act incident to revision of Title 18 of the United States Code as of September 1, 1948. 62 Stat. 867 (1948), Act June 25, 1948, § 21, 18 U.S. C.A. following section 5037; United States v. Schneiderman, S.D.Cal.1951, 102 F. Supp. 87, 90. The fact remains it would be legally impossible for the conspiracy charged in the indictment here to have existed as an illegal enterprise at any time prior to the effective date of the Smith Act on June 28, 1940.

Even though acts and declarations prior to June 28, 1940 are held not properly admissible as those of co-conspirators, such evidence is admissible in the case at bar upon another ground. One of the two means or methods which the defendants are charged with conspiring to employ in violating the Smith Act is "by * * * helping to organize as the Communist Party * * * a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government * * * by force and violence * * *." And since pre-Smith Act acts and declarations tend to disclose the nature and character and aims and objectives of the Communist Party during the pre-Smith Act period, such evidence is logically relevant to the issue raised by the indictment as to the nature and character and aims and objectives of the Communist Party during the post-Smith Act period covered by the indictment.

Testimony of witnesses as to acts and statements or declarations of certain of the defendants prior to June 28, 1940 is logically relevant to the issue as to whether or not the particular defendant named was a member of the Communist Party and had knowledge of the nature and character and aims and objectives of the Communist Party during the period covered by the indictment.

The defendants urge, however, that all pre-Smith Act evidence is irrelevant to any issue raised by the indictment at bar, because there is no basis in reason, they say, to draw any inference that activities which were admittedly legal prior to June 28, 1940 were continued after being declared illegal. See United States v. Oregon Medical Society, 1952, 343 U.S. 326, 332–333, 72 S.Ct. 690; Local 167 v. United States, 1934, 291 U.S. 293, 298, 54 S.Ct. 396, 78 L.Ed. 804; Cal.Code Civ.P. § 1963, subd. 32; 2 Wigmore, Evidence § 437 (3d ed. 1940); 1 Wharton, Criminal Evidence § 142 (11th ed. 1935).

But as Wigmore has so clearly explained: "When the existence of an object, condition, quality, or tendency at a given time is in issue, the prior existence of it is in human experience some indication of its probable persistence or continuance at a later period. The degree of probability of this continuance depends on the chances of intervening circumstances having occurred to bring the existence to an end." [2 Wigmore, Evidence § 437 (3d ed. 1940).]

As a rule, then, there is rational basis for assuming that the prior existence of certain facts which show the nature and character and aims and objectives of the Communist Party, and the knowledge thereof by certain defendants, prior to June 28, 1940 is "some indication of probable * * * continuance * * *." Even so, the question remains as to the probability that the "intervening circumstance" of the passage of the Smith Act would "bring the existence to an end."

If some type of normal unconcealed business activity were involved, it would seem highly probable that an "intervening cause" making such activity illegal would strongly tend to bring such activity to an end. But where as here the activity sought to be

proved—conspiracy to teach and advocate the necessity and duty of overthrowing the Government by force and violence as speedily as circumstances permit—is by its very nature covert and without regard for any law of the United States which might proscribe it, the degree of probability that passage of the Smith Act would "bring the existence to an end" seems low in the extreme.

Accordingly, the defendants' motion to strike evidence of matters occurring prior to June 28, 1940 will be denied. However such evidence will be limited to the purposes stated, and the jury will be instructed in substance as follows:

Evidence has been received of alleged statements or declarations and teachings of instructors in alleged Communist Party schools, and of certain alleged statements or declarations and acts of other alleged members of the Communist Party, said to have occurred before the Smith Act became law on June 28, 1940.

Such evidence has been admitted as being relevant to the issue of what was the nature and character and aims and objectives of the Communist Party during the period covered by the indictment. That is to say, such evidence as to alleged activities of the Communist Party before June 28, 1940 has been admitted to aid the jury in determining whether or not during the period covered by the indictment—that is during the years since June 28, 1940 and more particularly during the three-year period immediately preceding the filing of the indictment on December 21, 1951—the Communist Party of the United States of America was a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit, as alleged in the indictment.

Otherwise than as such evidence may aid the jury in determining the nature and character and aims and objectives of the Communist Party during the time covered by the indictment as above stated, evidence of alleged activities prior to June 28, 1940 is not to be considered by the jury as tending to establish the truth of any of the allegations of the indictment, except in this one particular: evidence as to alleged activities of any defendant in the Communist Party before June 28, 1940 may be considered by the jury, as to that defendant only, in determining whether or not such defendant was a member of the Communist Party and had knowledge of the nature and character and aims and objectives of the Communist Party and of what may have been advocated and taught by the Communist Party during the period covered by the indictment. See People v. Steclik, 1921, 187 Cal. 361, 203 P. 78, 84; People v. Wagner, 3d Dist.1924, 65 Cal.App. 704, 225 P. 464, 468–469; People v. La Rue, 3d Dist.1923, 62 Cal.App. 276, 216 P. 627, 630; People v. Roe, 3d Dist. 1922, 59 Cal.App. 690, 209 P. 381, 384; cf. Potlatch Lumber Co. v. Anderson, 9 Cir., 1912, 199 F. 742, 748.

Next to be considered is the admissibility of evidence of the acts and conduct and declarations or statements, during the period covered by the indictment, of third persons alleged to be co-conspirators with the defendants. It is settled that, before such evidence may be considered, the evidence must first show the existence of the conspiracy. Glasser v. United States, 1942, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680; Bartlett v. United States, 10 Cir., 1948, 166 F.2d 920, 924; Mayola v. United States, 9 Cir., 1934, 71 F.2d 65, 67; Nibbelink v. United States, 6 Cir., 1933, 66 F.2d 178, 179.

As was pointed out in Allen v. United States, 7 Cir., 1924, 4 F.2d 688, 691 certiorari denied, 1925, 267 U.S. 597, 598, 45 S.Ct. 352, 69 L.Ed. 806, 1925, 268 U.S. 689, 45 S.Ct. 509, 69 L.Ed. 1158: "A conspiracy may be established by circumstantial evidence or by deduction from facts. The common design is the essence of the crime, and this may be made to appear when the parties steadily pursue the same object, whether acting separately or together, by common or different means, but ever leading to the same unlawful result. If the parties acted together to accomplish something unlawful, a conspiracy is shown, even though individual conspirators may have done acts in furtherance of the common

unlawful design apart from and unknown to the others. All of the conspirators need not be acquainted with each other. They may not have previously associated together. One defendant may know but one other member of the conspiracy. But if, knowing that others have combined to violate the law, a party knowingly co-operates to further the object of the conspiracy, he becomes a party thereto."

■■■■■ A conspiracy, like any other crime, can only be established by the various external manifestations of the parties —the acts and conduct and declarations or statements of third persons, taken together with the acts and conduct and declarations or statements of the defendants. Garhart v. United States, 10 Cir., 1946, 157 F.2d 777, 780–781. This does not mean that the existence of the conspiracy may be proved solely by the declarations or statements of the defendants themselves, for these might fall into the field of extra-judicial admissions and so require corroboration. Since conspiracy is the criminal offense charged, there must be some corroborating evidence of the existence of this corpus delicti *aliunde* the extra-judicial statements or declarations of the accused, United States v. Di Orio, 3 Cir., 1945, 150 F.2d 938, 940, certiorari denied, 1945, 326 U.S. 771, 66 S. Ct. 175, 90 L.Ed. 465; Anderson v. United States, 6 Cir., 1941, 124 F.2d 58, 65–66 reversed on other ground, 1943, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; Cummings v. United States, 9 Cir., 1926, 15 F.2d 168, 169; cf. Wiggins v. United States, 9 Cir., 1933, 64 F.2d 950, 951–952, certiorari denied, 1933, 290 U.S. 657, 54 S.Ct. 72, 78 L.Ed. 569; 3 Wigmore, Evidence § 821 (3d ed. 1940), 7 Id. §§ 2070–2071; 2 Wharton, Criminal Evidence §§ 640–641 (11th ed. 1935), except in cases where the incriminatory statements or declarations of the accused were made "prior to the crime," or themselves constitute the offense or an essential element thereof. See Warszower v. United States, 1941, 312 U.S. 342, 347–348, 61 S.Ct. 603, 85 L.Ed. 876; cf. Yost v. United States, 4 Cir., 1946, 157 F.2d 147; Tabor v. United States, 4 Cir., 1945, 152 F.2d 254.

But there is no necessity to consider here whether an alleged statement or declaration of a defendant should be classed as a declaration before the occurrence of the crime, or as a statement constituting the crime, for there is abundant evidence *aliunde* declarations of the accused which, if believed, would be sufficient to show the existence of the conspiracy. See Glasser v. United States, supra, 315 U.S. at 80–81, 62 S.Ct. 457, 86 L.Ed. 680; Carlson v. United States, 10 Cir., 1951, 187 F.2d 366, 370–371, certiorari denied, 1951, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367; United States v. Manton, 2 Cir., 1938, 107 F.2d 834, 839, certiorari denied, 1940, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012.

■■■■■ If and when existence of the conspiracy is established, evidence as to membership in the conspiracy is the next problem to be faced. It is conceded that a defendant's membership must be shown without regard to and independent of the acts and statements or declarations of others, Glasser v. United States, supra, 315 U.S. at 74, 62 S.Ct. 457, 86 L.Ed. 680; May v. United States, D.C.Cir., 1949, 84 U.S.App. D.C. 233, 175 F.2d 994, 1007–1008, certiorari denied, 1949, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505; Bartlett v. United States, supra, 166 F.2d at page 924; Mayola v. United States, supra, 71 F.2d at page 67; Minner v. United States, 10 Cir., 1932, 57 F.2d 506, 511; see also cases collected in United States v. United States Gypsum Co., D.D.C. 1946, 67 F.Supp. 397, 451–452.

But the defendants urge that the source of proof of the conspiracy membership of third-party declarants is subject not only to the limitation just stated, but also to the added limitation that third-party membership in the conspiracy must be shown without regard to and independent of the acts and statements or declarations of the third persons themselves. As claimed authority for this contention the defendants cite Glasser v. United States, supra, 315 U.S. at page 74, 62 S.Ct. 457. But the Glasser case is in no sense authority for the claimed limitation last stated. See May v. United States, supra, 84 U.S.App.D.C. 233, 175 F.2d at page 1008, n. 40.

What the defendants are thus arguing is that proof of participation of a third-

party declarant in a conspiracy is analogous to proof of agency; that just as the hearsay declarations of a claimed agent may not be used to prove existence of the agency, Holland v. Cooper, 5 Cir., 1951, 192 F.2d 214, 216; Brownell v. Tide Water Associated Oil Co., 1 Cir., 1944, 121 F.2d 239, 244; Nygard v. Dickinson, 9 Cir., 1938, 97 F.2d 53, 57, neither may the acts or declarations of third-party declarants be used to prove either existence of the conspiracy or the conspiracy membership of the third-party declarant.

True, the acts and declarations of one person may not serve as evidence of another's relationship as co-conspirator to an alleged conspiracy for reasons closely akin to those which give force to the rule that the extra-judicial declaration of a claimed agent may not be used to establish another's relationship as principal to an alleged agency. But there the analogy ceases, since admitting evidence of acts and declarations of a third person to prove his own membership in a conspiracy permits such evidence to serve merely as proof of the relationship of the third-party actor or declarant himself—and not the relationship of any other person—to the conspiracy. Such acts and declarations thus lack the self-serving character of those which would establish the declarant's relationship to another person, and indeed possess the trustworthy character of statements against interest. See Donnelly v. United States, 1913, 228 U.S. 243, 272, 277–278, 33 S.Ct. 449, 57 L. Ed. 820, 5 Wigmore, Evidence §§ 1476–1477 (3d ed. 1940).

Moreover, the effect of what the defendants urge in this connection discloses plainly the fallacy of their position. If the conspiracy membership of third-party declarants may not be shown by the acts and statements or declarations of others and, under the rule for which the defendants contend, may not be shown through proof of their conduct, then acts and statements or declarations of co-conspirators simply could not be admitted in any conspiracy trial— a result in which the defendants themselves would not concur.

In every prosecution for conspiracy, problems involving the admissibility of acts and statements or declarations of conspirators raise questions as to the competency of evidence. Whether the condition precedent that there be some evidence of the existence of the conspiracy *dehors* the statements or declarations of the accused, Cummings v. United States, supra, 15 F.2d at page 169; cf. Wiggins v. United States, supra, 64 F.2d at page 951–952, and whether "there is proof *aliunde*" acts and statements or declarations of the third-party declarant that the accused was "connected with the conspiracy", Glasser v. United States, supra, 315 U.S. at page 74, 62 S.Ct. 457, 467, are preliminarily issues of fact to be decided by the judge in determining whether acts and statements or declarations of an alleged co-conspirator are to be received as evidence against the accused.

As Judge Learned Hand said in United States v. Dennis, supra, 183 F.2d at page 231: " * * * the better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends * * *." Cf. D'Aquino v. United States, 9 Cir., 1951, 192 F.2d 338, 357; United States v. Kertess, 2 Cir., 1944, 139 F.2d 923, 929, certiorari denied, 1944, 321 U.S. 795, 64 S.Ct. 847, 88 L.Ed. 1084; Wynkoop v. United States, 9 Cir., 1927, 22 F.2d 799; Pearlman v. United States, 9 Cir., 1926, 10 F.2d 460, 462; Daeche v. United States, 2 Cir., 1918, 250 F. 566, 571.

Here, as in Clune v. United States, 1895, 159 U.S. 590, 592–593, 16 S.Ct. 125, 126, 40 L.Ed. 269, the prosecution is "seeking to establish a conspiracy by circumstantial testimony". And as Mr. Justice Brewer there said: "It is familiar law that where a case rests upon that character of evidence, much discretion is left to the trial court, and its ruling will be sustained, if the testimony which is admitted tends even remotely to establish the ultimate fact." See also Delaney v. United States, 1924, 263 U.S. 586, 590, 44 S.Ct. 206, 68 L.Ed. 462; Wiborg v. United States, 1896, 163 U.S. 632, 657–658, 16 S.Ct. 1127, 41 L.Ed. 289; United States v. Von Clemm, 2 Cir., 1943, 136 F.2d 968, 971, certiorari denied, 1943, 320 U.S. 769, 64 S.Ct. 81, 88 L.Ed. 459.

 I find that there is at bar some evidence of the existence of the alleged conspiracy *dehors* the statements or declarations of the accused. I find also that there is proof *aliunde* acts and statements or declarations of third parties that the accused were members of the alleged conspiracy as charged.

The defendants' motion to strike evidence of acts and declarations of alleged co-conspirators, as such, must therefore be denied, and the jury will be instructed substantially as follows:

In your consideration of the evidence you should first determine whether or not the conspiracy existed as charged in the indictment. If you conclude that such conspiracy did exist, you should next determine, as to each defendant, whether or not he or she was knowingly and willfully a party to or member of the conspiracy.

In considering whether or not a particular defendant was a member of the conspiracy, you must do so without regard to and independently of the statements or declarations of others. That is to say, you must determine the issue as to the conspiracy membership of a particular defendant from any evidence as to his or her own statements or declarations and acts or conduct.

If you find that the alleged conspiracy did exist and that all or any of the defendants were members of such conspiracy as charged, you should then determine whether the alleged club chairmen, teachers and others mentioned in the testimony, but not named as defendants in the indictment, were knowingly and willfully members of the conspiracy during the period of time covered in the indictment. In this determination, as in the determination of the conspiracy membership of any defendant, only the statements or declarations and acts or conduct of the person whose membership is in question, and not the statements or acts of others, may be considered.

If and when the existence of the conspiracy charged in the indictment and the membership of all or any of the defendants in such conspiracy has been found, then the acts thereafter done and the statements or declarations thereafter made by any person found by you to be a member of the conspiracy may be considered in connection with the case as to any defendant whom you find to have been a member of the conspiracy, even though such acts and declarations may have been made in the absence and without the knowledge of such defendant, provided such acts were done and such statements or declarations were made during the continuance of such conspiracy and in furtherance of an object or purpose of the conspiracy.

So if you conclude from the evidence that a defendant was a member of the conspiracy, you may then consider as if made by him or her any statements or declarations of other members of the conspiracy, including other defendants who you may find were members of the conspiracy, provided such statements or declarations were made during the existence of the conspiracy and in furtherance of an object or purpose of the conspiracy as charged in the indictment. But otherwise any admission or incriminatory statement made outside of court by one defendant may not be considered as evidence against another defendant not present when the statement was made.

The defendants also seek to strike as allegedly improper the conclusions of several witnesses. Principal among these are conclusions to the effect that certain third persons were members of the Communist Party. So this motion presents the question whether the court should allow the witness briefly to state the result of his reasoning, or require him to detail the facts behind the conclusion, and allow the jury to find the result.

 The general rule is that if the facts underlying a conclusion may be easily stated and as stated will accurately reproduce to the jury what the witness has observed, then the conclusions should not be allowed. If, however, such a practice has the effect of only verbally tongue-tieing the witness or of making it impossible for the witness to convey to the jury what he has observed, then statement of a conclusion should be allowed. United States v. Petrone, 2 Cir., 1950, 185 F.2d 334, 336, certiorari denied, 1951, 340 U.S. 931, 71 S.Ct.

493, 95 L.Ed. 672; United States v. Cotter, 2 Cir., 1932, 60 F.2d 689, 693–694, certiorari denied, 1932, 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575; Nichols v. United States, 5 Cir., 1931, 48 F.2d 46, 49; Central R. Co. of New Jersey v. Monahan, 2 Cir., 1926, 11 F.2d 212, 214; Manney v. Housing Authority of City of Richmond, 79 Cal.App.2d 453, 180 P.2d 69, 73 (1947); 7 Wigmore, Evidence § 1924 (3d ed. 1940).

■ In the case at bar, unless the witness happened to be keeper of the membership rolls of the Communist Party, it is difficult to envision a recital of the facts showing how he knew a certain person was a party member. To determine who was a party member, where as here direct indicia of membership do not appear to have existed, in reality is but a matter of showing association and of stating how the person was known to the witness. Thus the conclusions in question were necessary as a matter of practicality, and the remedy of the defendants was by way of full cross examination, cf. United States v. Petrone, supra, 185 F.2d at page 336; United States v. Stoehr, M.D.Pa.1951, 100 F.Supp. 143, 156, not by motion to strike.

■ The defendants also move to strike certain documentary evidence as barred by the doctrine of res judicata. In this connection it is claimed that certain allegedly basic Communist works, such as Foundations of Leninism by J. Stalin, State and Revolution by V. I. Lenin, the History of the Communist Party of the Soviet Union, and the Communist Manifesto by Karl Marx have already been litigated in the case of Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796, and may not therefore be re-litigated here. The former Schneiderman case was a civil action brought by the Government under the provisions of § 15 of the Act of June 29, 1906, 34 Stat. 596, 8 U.S.C.A. § 405, to cancel the defendant Schneiderman's certificate of citizenship which had been granted in 1927.

In that action the complaint charged defendant Schneiderman had illegally procured his naturalization certificate in that at the time of his naturalization and during the five years preceding his naturalization he "had not behaved as a person attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States, but in truth and in fact during all said time, [he] was a member of and affiliated with and believed in and supported the principles of organizations then known as the Workers (Communist) Party of America and the Young Workers (Communist) League of America, whose principles were opposed to the principles of the Constitution of the United States and * * advocated and taught the overthrow of the Government, Constitution and Laws of the United States by force and violence."

The lower court's determination that Schneiderman's citizenship certificate should be cancelled was reversed by the Supreme Court because "the Government has not proved by 'clear, unequivocal and convincing' evidence that the naturalization court could not have been satisfied that petitioner was attached to the principles of the Constitution when he was naturalized." Schneiderman v. United States, supra, 320 U.S. at page 142, 63 S.Ct. 1333, 1345.

Patently such litigation of the documents in question could not touch the manner in which the writings might be used in the future. That a person may have been acquitted of murder with a certain gun would not bar the prosecution from introducing the identical gun should that person use it in another killing. By the same token since the defendants at bar have allegedly used the documents in question in an illegal manner since 1927, nothing adjudicated as of 1927 could serve to bar the introduction of such documents upon the trial of the later charge.

■ Accordingly, the motion to strike grounded upon the plea of res judicata will be denied, and the jury will be instructed substantially as follows:

During the course of the trial there have been various references to the case of Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. That case was not a prosecution under the Smith Act, and the Supreme Court did not there

determine any of the issues raised by the indictment here.

Evidence as to that case was received on the issue of intent in this case, and is to be considered insofar as it may aid determination of that issue here.

■■■ During the course of the examination of prosecution witnesses, occasionally a witness has answered a question not put, or has volunteered testimony not responsive to the pending question. The defendants now seek to strike such answers as being non-responsive.

Wigmore holds that the objection of non-responsiveness is not, as such, a ground for the exclusion of testimony, declaring that neither questioning nor opposing attorney should be permitted to make this objection since "No party is owner of facts in his private right. No party can impose silence on the witness called by Justice." Wigmore, Evidence § 785 (3d ed. 1940).

While it is true that neither side has the right to suppress the truth, it is an obvious requisite of orderly procedure that each side have a voice in determining the order in which the truth shall be told. If the questioning attorney attempts to suppress the truth, opposing counsel can bring it out on cross or re-direct examination. But to deny the questioning attorney the privilege of having non-responsive answers stricken would make the course of direct examination infinitely more difficult and render cross examination virtually useless.

These considerations point to the desirability of the rule that counsel who is not conducting the questioning has no standing to ask that a non-responsive answer be stricken upon the sole ground of lack of responsiveness. Parente v. United States, 8 Cir., 1936, 82 F.2d 722, 724; Page Steel & Wire Co. v. Blair Engineering Co., 3 Cir., 1927, 22 F.2d 403, 406, certiorari denied, 1928, 276 U.S. 623, 48 S.Ct. 303, 72 L.Ed. 737; Ridenour v. United States, 3 Cir., 1926, 14 F.2d 888, 891; Holzer v. Read, 1932, 216 Cal. 119, 122, 13 P.2d 697, 698; Hirshfeld v. Dana, 1924, 193 Cal. 142, 148, 223 P. 451, 453–454; but see Cal.Code Civ.Proc. § 2056; Westman v. Clifton's Brookdale, 2 Dist.

1948, 89 Cal.App.2d 307, 200 P.2d 814; cf. Burns v. California Milk Transport, 2 Dist. 1948, 89 Cal.App.2d 70, 200 P.2d 43; People v. Geibel, 2 Dist. 1949, 93 Cal.App.2d 147, 208 P.2d 743. Accordingly, the defendants' motion to strike certain evidence solely upon the ground of lack of responsiveness to a pending question will be denied.

■■ Last to be considered is evidence which is claimed to be too remote and prejudicial in relation to its relevance. Such evidence embraces alleged activity in other organizations than the Communist Party, alleged activity of various defendants and other alleged members of the Communist Party on matters of foreign policy and highly controversial domestic matters, evidence of isolated incidents which do not tend to show the nature and character or aims and objectives of the Communist Party, and evidence of other matters only remotely relevant to the issues at bar. See 1 Wharton, Criminal Evidence §§ 227, 230 (11th ed. 1935).

In a case such as this, where issues are raised as to the nature and character and aims and objectives of the Communist Party, as well as the intent of the defendants in matters of advocacy, there is very little which may not correctly be said to be in some degree relevant. It is my opinion however that proper exercise of judicial discretion requires striking from the record those matters which might lead the jury down a collateral issue or might tend to subject them to some prejudice, even though the evidence involving such matters might be technically relevant. See United States v. Werner, 2 Cir., 1947, 160 F.2d 438, 443; Metropolitan Life Ins. Co. v. Armstrong, 8 Cir. 1936, 85 F.2d 187, 193; Kettenbach v. United States, 9 Cir., 1913, 202 F. 377, 384, certiorari denied, 1913, 229 U.S. 613, 33 S.Ct. 772, 57 L.Ed. 1352; United States v. Stoehr, supra, 100 F.Supp. at page 155; 1 Wharton Criminal Evidence § 370 (11th ed. 1935.)

The considerations just stated prompt the granting of many of the defendants' motions to strike which are specified in the accompanying order. All pending motions to strike which are not expressly granted in the accompanying order are hereby denied.