**WOLIN et al.**

v.

**UNITED STATES.**

No. 6717.

United States Court of Appeals
Fourth Circuit.

Argued April 5, 1954.

Decided April 9, 1954.

issuing export licenses to the defendant corporations. The payment of the monies is admitted. The defense is that the payments were not given for or intended for the approval of licenses by Bennett, but rather were paid as commissions for procuring a customer for the defendant corporations.

As the first ground for reversal, appellants set out an alleged misstatement by government counsel in his closing argument to the jury, and the Court's refusal to give counsel for defendants an opportunity to correct the alleged misstatement. The statement was:

"You have had Mr. Bennett on the stand who has told you ladies and gentlemen in so many words and plain and simple English, 'I took money, I took money in checks.' Why? Because I am a licensing officer. Bennett has told you in plain and simple English, 'I am guilty.' Why would he tell you that? Because he is."

This was apparently an attempt to give the jury the Government's idea of the total effect of Bennett's testimony and the inferences to be drawn therefrom, and thus to answer the argument of counsel for defendants that there was no proof of a guilty principal whom defendants could have aided and abetted. In the light of the record before us, and the Court's precise charge that statements of counsel of what the evidence was, or what it proved, were in no sense controlling on the jury, we think there was here no reversible error. See, D'Aquino v. United States, 9 Cir., 192 F.2d 338, 367, certiorari denied 343 U.S. 935, 72 S.Ct. 772, 96 L.Ed. 1343; Mellor v. United States, 8 Cir., 160 F.2d 757, 765; Hilliard v. United States, 4 Cir., 121 F.2d 992; United States v. Goodman, 7 Cir., 110 F.2d 390; United States v. Holt, 7 Cir., 108 F.2d 365, 369. The facts in the instant case are quite different from those in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L. Ed. 1314, on which defendants rely.

Thurman Arnold, Washington, D. C. (Armistead L. Boothe, Alexandria, Va., Milton V. Freeman, Washington, D. C., Boothe, Dudley, Koontz & Boothe and Arnold, Fortas & Porter, Washington, D. C., on the brief), for appellants.

James R. Moore, Asst. U. S. Atty., Richmond, Va. (L. S. Parsons, Jr., U. S. Atty., and Austin E. Owen, Sp. Asst. to the U. S. Atty., Norfolk, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from the conviction of appellants under an indictment charging bribery of a government employee, 18 U.S.C.A. § 201, and a conspiracy to violate the laws of the United States, 18 U.S.C.A. § 201, 18 U.S.C.A. § 371. A sentence of eighteen months imprisonment was imposed on Martin Wolin, the individual defendant, and a fine of $1,000.00 was imposed on each of the corporate defendants.

The indictment charges in substance that Henry George Bennett, an employee of the United States Government, employed as a licensing officer authorized to grant export licenses for shipment of commodities to foreign countries, received certain checks as payment for

■ We find no merit whatever in the contention of defendants that the prosecuting attorney, after Mrs. Twila Bennett had entered a plea of guilty, introduced testimony from her known to be false, in order to convict the defendants. Any inconsistencies in her testimony were for the jury in determining her credibility and in deciding on the weight that should be given to her evidence.

■ Defendants next contend that the District Judge, after the jury could not agree on a verdict, brought improper pressure on the jury in order to secure a verdict. After the jury had deliberated some ten hours without reaching a verdict, the District Judge then read to the jury the so-called "Allen Instruction," based on Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528, and prefaced it by saying:

"Ladies and gentlemen, it is important that the jury reach a verdict if it is possible. The jury room is no place for pride of opinion. It is a place for the exchange of views. A trial, as you well and doubtless recognize, is a very expensive proceeding, not only in money but in energy and expenditures and every other way. This case has been going on for a week or more and the Court will read to you what the Supreme Court of the United States has said in reference to the duty of a juror to see if it will be of any help to you."

After the luncheon recess, at the request of the jury, the District Judge reread the "Allen Instruction" and stated:

"I will say this, that before the Court mentioned the cost and expense of a trial and the effort and anxiety and so on, it does not want you to think for a minute that that is to be taken into consideration or in determining the guilt or innocence of the accused. That has nothing to do with the finding of your verdict. It was mentioned simply as one of the reasons why a jury should agree if it is practical to do so. Of course, the case should be decided only on the evidence and on the charge of the Court given to you after the conclusion of the case and before you take it under advisement."

We find here no judicial coercion of the jury and we think the District Judge's conduct was altogether proper.

The contention of defendants here is not supported by the cases of Burton v. United States, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482; United States v. Samuel Dunkel & Co., 2 Cir., 173 F.2d 506; Gideon v. United States, 8 Cir., 52 F.2d 427; Nigro v. United States, 8 Cir., 4 F.2d 781; Stewart v. United States, 8 Cir., 300 F. 769.

And see, in support of the District Judge's conduct: Lias v. United States, 4 Cir., 51 F.2d 215, affirmed 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505; Johnson v. United States, 4 Cir., 5 F.2d 471, 475–476, certiorari denied sub. nom. Eick v. United States, 269 U.S. 574, 46 S.Ct. 101, 70 L.Ed. 419; Wright v. United States, 8 Cir., 175 F.2d 384; Boehm v. United States, 8 Cir., 123 F.2d 791, certiorari denied 315 U.S. 828, 62 S.Ct. 794, 86 L.Ed. 1223; United States v. McGuire, 2 Cir., 64 F.2d 485, certiorari denied 290 U.S. 645, 54 S.Ct. 63, 78 L.Ed. 560.

■ We find no ground for reversal in the admission of the following evidence, elicited from the witness Bennett, over objection of the defendants, on direct examination by the prosecuting attorney:

"Q. All right, sir. Was there anything said during the course of that evening by Mr. Wolin as to you helping him get licenses? A. He fully expected to get licenses for any of the Venezuelan trade, yes.

"Q. Did he ask you to help him get them? A. He knew that if Mr. Pardeo purchased material from him that I would grant a license."

There is no merit in the contention that "It allowed Bennett to testify as to his

opinion as to what was in Wolin's mind." See, in this connection, United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; United States v. Petrone, 2 Cir., 185 F.2d 334, 336, certiorari denied 340 U.S. 931, 71 S.Ct. 493, 95 L.Ed. 672; Zimberg v. United States, 1 Cir., 142 F.2d 132, 135, certiorari denied 323 U.S. 712, 65 S.Ct. 38, 89 L. Ed. 573; Roberts v. United States, 4 Cir., 60 F.2d 871, 872; United States v. Cotter, 2 Cir., 60 F.2d 689, 693, 694; Central Railroad Co. of New Jersey v. Monahan, 2 Cir., 11 F.2d 212, 214.

■ This brings us to the final contention of defendants that there was no substantial evidence of the guilt of defendants and that a verdict should have been directed in favor of defendants. With this we are unable to agree.

Counsel for defendants admit that it was reprehensible here for defendants to employ the Bennetts on commission to secure export tin business for defendants, when Wolin well knew no tin could be exported without a license from Bennett, acting in his public official capacity. On the record before us, we think there was ample support for the finding of the jury that this conduct was not only reprehensible but criminal.

We mention some of the circumstances (which the evidence tended to show) surrounding these remarkable agreements between Wolin and the Bennetts, when Wolin knew Bennett's position and duties, while Bennett knew about Wolin's business. A meeting was arranged between Wolin and the Bennetts at a hotel where the transactions in question were discussed. Wolin paid for this and other entertainment of the Bennetts and made presents to Mrs. Bennett. The so-called "commissions" were sent to Mrs. Bennett at her home and applications for export licenses were to be sent to the Bennett home. Wolin suggested that if Bennett might be "trapped," Wolin would hold the "commissions" in escrow for as long as five years.

Wolin, at a party given by him on the "Queen Elizabeth," introduced the Bennetts to Mrs. Halperin, who would, in Wolin's absence, send the Bennetts applications and "commissions." Through Mrs. Halperin, Bennett promised Wolin that fifteen applications of Chal Steel (Wolin's corporation) would be in order. Nearly half of the Chal Steel applications approved by Bennett were not recorded by him. During 1951, when many applications of other exporters were denied, all of the applications of defendants were approved. These and many other details formed support for the jury's finding that the arrangement between Wolin and the Bennetts was not one merely for the securing of business for Wolin by the Bennetts, and that the payments to the Bennetts were made with the knowledge and intent of both Wolin and the Bennetts that these payments were intended to secure favorable official action by Bennett in approving Wolin's applications for export licenses.

The judgment of the District Court is affirmed.

Affirmed.